1  Juan Hong (State Bar No. 234046)
2  Law Office of Juan Hong, A Law Corp.
   4199 Campus Drive, Suite 550
3  Irvine, CA 92612
   Phone: (949) 334-7710
4  Fax: (949) 335-6647
   Email: jhong48@gmail.com
5
6  Attorney for Plaintiff
   SUE SHIN
7

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/09/2023 12:24 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Trinh, Deputy Clerk

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                    COUNTY OF LOS ANGELES

11
12  SUE SHIN, on behalf of herself, all        ) Case No. 23STCV27571
    others similarly situated, and the general ) **_CLASS ACTION FOR JURY TRIAL_**
13  public.                                     ) (1) VIOLATION OF CAL. BUS. &
                                                ) PROF. CODE §17200: Unlawful
14  vs.                                         ) Conduct
                                                ) (2) VIOLATION OF CAL. BUS. &
15                                              ) PROF. CODE §17200 Unfair Conduct
16  SANYO FOODS CORP. OF                        ) (3) VIOLATION OF CAL. BUS. &
    AMERICA, TAKEO SATO, and DOES              ) PROF. CODE §17500 *et seq*.
17  1 through 10.                               ) (4) VIOLATION OF CAL. CIVIL
                                                ) CODE §1750 *et seq*.
18                                              ) (5) UNJUST ENRICHMENT/
19  Defendants.                                 ) BREACH OF QUASI CONTRACT
                                                ) (6) FRAUDULENT
20                                              ) MISREPRESENTATION
21                                              ) (7) NEGLIGENT
                                                ) MISREPRESENTATION
22                                              ) (8) BREACH OF EXPRESS
23                                              ) WARRANTY UNDER
                                                ) CAL.COM.CODE §2313
24                                              ) (9) BREACH OF IMPLIED
25                                              ) WARRANTY OF
26                                              ) MERCHANTABILITY UNDER
27                                              ) CAL.COM.CODE §2314(1)
                                                )
28  _____ )

1 (COMPLAINT FOR CLASS ACTION)

1

2

3   1.      Plaintiff Sue Shin ("Plaintiff"), on behalf of herself, all others similarly

4   situated, and the general public, by and through her undersigned counsel, hereby

5   sue Defendant SANYO FOODS CORP. OF AMERICA ("SANYO" or

6   "Defendant") and Defendant TAKEO SATO, and on the basis of personal

7   knowledge, information and belief, and investigation of counsel, alleges as

8   follows.

9   2.      This action deals with packaged noodle products ("SAPPORO ICHIBAN

10  Products") manufactured and distributed by Defendant.  From August 2018 to

11  December 2019, Plaintiff bought the noodle products from convenient stores and

12  grocery markets in Los Angeles, California.

13  3.      The SAPPORO ICHIBAN Products contain "0g Trans Fat" claim on the

14  front label of package, outside the Nutrition Facts Panel.  The Nutrition Facts Panel

15  is on the backside of package. (EXHBIT 1.)  Plaintiff was misled that the

16  SAPPORO ICHIBAN Products do not contain trans fat at all.

17  4.      Trans fat has become increasingly recognized as a dangerous substance and

18  a leading cause of numerous serious ailments, including heart disease and diabetes.

19  5.      If the product contained "less than 0.5 gram" trans fat and more than 0.0

20  gram, it is required to tell the consumer on the Nutrition Facts Panel that it

21  contained 0 grams trans fat, even though it contained trans fat. (EXHIBIT 1.)  The

22  claim "0g Trans Fat" is not only permitted within the panel, but mandated.

23  6.      However, a statement as to the amount of a nutrient mandated inside the

24  Nutrition Facts Panel is not necessarily permitted by the FDCA elsewhere on the

25  packaging. 21 C.F.R. § 101.13(c).  The FDCA does not allow the same "0g Trans

26  Fat" claim elsewhere on the label, rendering the product misbranded.  It is

27  unlawful to state "0g Trans Fat," outside the Nutrition Facts Panel.  Any

28  commercial product with the claim "0g Trans Fat" outside the Nutrition Facts

Panel is considered misbranded by the FDCA and California Health and Safety Code.  It is prohibited to be sold in markets.  The claim "0g Trans Fat" is false because a reasonable consumer might infer that the product does not contain trans fat. (See *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015); *Hawkins v. Kroger*, 906 F.3d 763 (9th Cir. 2018); *Hawkins v. Kroger Company*, 512 F.Supp.3d 1079 (2021).)

7.     The SAPPORO ICHIBAN Products make the claim "0g Trans Fat" outside the Nutrition Facts Panel.  The Products are misbranded because the Products contain trans fat.  It is unlawful for Defendant SANYO to sell the misbranded products in the market.  Plaintiff reasonably believed that the products were legitimately sold.  But, Plaintiff's belief was wrong.  Plaintiff bought the products that were not marketable.  Moreover, in making the purchases, Plaintiff relied on the information contained on the face of the label that the product contained "0g Trans Fat."  Plaintiff, as a reasonable consumer, was misled that the SAPPORO ICHIBAN Products do not contain trans fat.  Plaintiff suffered economic injury because she purchased the products she otherwise would not have.

8.     Plaintiff commences this class action and action for public injunctive relief alleging nine state law claims for (1) VIOLATION OF CAL. BUS. & PROF. CODE §17200 et seq. ("UCL"), Unlawful Conduct; (2) VIOLATION OF CAL. BUS. & PROF. CODE §17200 et seq. ("UCL"), Unfair Conduct; (3) VIOLATION OF CAL. BUS. & PROF. CODE §17500 et seq., False Advertising Law ("FAL"); (4) VIOLATION OF CAL. CIVIL CODE §1750 et seq., Consumer Legal Remedies Act ("CLRA"); (5) UNJUST ENRICHMENT/ BREACH OF QUASI CONTRACT; (6) FRAUDULENT MISREPRESENTATION; (7) NEGLIGENT MISREPRESENTATION; (8) BREACH OF EXPRESS WARRANTY UNDER CAL.COM.CODE §2313; (9) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CAL.COM.CODE §2314(1).

1
2
3

**JURISDICTION AND VENUE**

4
5

9.     This Court has subject matter jurisdiction under California Code of Civil Procedure section 382.

6
7
8
9

10.     The court has personal jurisdiction over Defendant because Defendant has purposely availed itself of the benefits and privileges of conducting business activities within California and consented to personal jurisdiction by registering to do business in California.

10
11
12
13
14
15
16
17
18

11.     A claimant under California's central consumer protection statutes — the Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL") and False Advertising Law ("FAL") — may seek injunctive relief to correct whatever the defendant did that led to the lawsuit.  The California Supreme Court defined "public injunctive relief" as relief whose "primary purpose and effect" is to "prohibit and enjoin conduct injurious to the general public," and from which any benefit to the plaintiff is "only by virtue of being a member of the public."  A typical example of public injunctive relief would be an injunction against a public communication that the plaintiff already knows is deceptive.

19
20
21
22
23
24
25

12.     This Court has jurisdiction over this action under the California Constitution, Article VI, Section 10, which grants the Superior Court original jurisdiction in all causes except those given by statute to other courts.  The statutes under which this action is brought do not specifically grant jurisdiction to any other court, and the issues are based solely on California statutes and law, including California Code of Civil Procedure, California Civil Code, California Health and Safety Code, and the California Business and Professions Code.

26
27

13.     The California Superior Court has jurisdiction over Defendants, because they are citizens of California, have sufficient minimum contacts in California, and

28

otherwise intentionally avail themselves to the California market, including establishing their principal place of business and transacting business in California.

14.     Venue is proper in this Court because Plaintiff purchased the SAPPORO ICHIBAN Products in this county, SANYO is authorized to conduct business in this county, and Defendant has intentionally availed itself of the laws and markets of this county through the promotion, marketing, distribution, and sale of the SAPPORO ICHIBAN Products in this county, and is subject to personal jurisdiction in this county.

**PARTIES**

15.     Plaintiff Sue Shin is a resident of the state of California.  Since August of 2018, she saw the label of Sapporo Ichiban Miso Ramen sold in grocery stores in Los Angeles, California, including Mitsuwa Marketplace.  Plaintiff purchased Sapporo Ichiban Miso Ramen in reliance on the Defendant's misleading labels with the icon of "0g Trans Fat." (Exhibit 1.)

16.     On information and belief, Defendant SANYO FOODS CORP. OF AMERICA ("SANYO") is a corporation with its principal place of business at 11955 Monarch St., Garden Grove, California 92841.  Defendant TAKEO SATO is the General Manager of Defendant SANYO.  Defendant TAKEO SATO is held personally liable for Defendant SANYO's violation of strict liability provision of the Federal Food, Drug, and Cosmetic Act because Defendant TAKEO SATO has a responsible share in furtherance of the transaction which the statute outlaws. 21 USC §§ 331(a) and 333(a).

17.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 10 are unknown to Plaintiff, who therefore sues the DOE defendants by such fictitious names. Plaintiff will amend this complaint to show true names and capacities when they have been ascertained.  Defendants will refer to SANYO FOODS CORP. OF AMERICA and DOES 1 through 10.

18.     Defendant SANYO deliberately cultivated the misleading statement of "0g Trans Fat" through its marketing of the Defendants' products.

**FACTUAL BACKGROUND**

19.     The front label of the Defendant's noodle products has a prominent statement of "0g Trans Fat." (Exhibit 1.)  In this Complaint, the products are referred to as "SAPPORO ICHIBAN Products" including: "Sapporo Ichiban Hot and Spicy Chicken," "Sapporo Ichiban Miso Ramen," "Sapporo Ichiban Shio Ramen," "Sapporo Ichiban Tonkotsu Ramen," "Sapporo Ichiban Chow Mein," "Sapporo Ichiban Shoyu Bowl," "Sapporo Ichiban Miso Bowl," "Sapporo Ichiban Shio Bowl."

20.     As of November 2023, SANYO sells SAPPORO ICHIBAN Products at amazon.com, walmart.com, ebay.com, vons.com, sanyofoodsamerica.com, target.com, kroger.com, yamibuy.com, worldmarket.com, albertsons.com, and many retailers in the United States.

21.     Even if the third parties advertise falsely the SAPPORAO ICHIBAN products, Defendant SANYO as well as the third parties violates the following codes:

• California Health & Safety Code § 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

• California Health & Safety Code § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

• California Health & Safety Code § 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .")

22.     Plaintiff commenced her individual action of 22STCV26723 (filed on 08/17/2022) alleging four state law claims for (1) VIOLATION OF CAL. BUS. &

PROF. CODE §17200 *et seq.* ("UCL"), Unlawful Conduct; (2) VIOLATION OF CAL. BUS. & PROF. CODE §17200 *et seq.* ("UCL"), Unfair Conduct; (3) VIOLATION OF CAL. BUS. & PROF. CODE §17500 *et seq.*, False Advertising Law ("FAL"); (4) VIOLATION OF CAL. CIVIL CODE §1750 *et seq.*, Consumer Legal Remedies Act ("CLRA").

23.     In November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known by the laboratory tests that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving.  SANYO knew and should have known that the slogan of "0g Trans Fat" is false and misleading.  Despite its knowledge, Defendant SANYO has kept the slogan of "0g Trans Fat" to induce reasonable consumers to believe the SAPPORO ICHIBAN Products do not contain trans fat at all.

24.     Now in this Complaint, Plaintiff alleges claims for class action and action for public injunctive relief alleging nine state law claims for (1) VIOLATION OF CAL. BUS. & PROF. CODE §17200 et seq. ("UCL"), Unlawful Conduct; (2) VIOLATION OF CAL. BUS. & PROF. CODE §17200 et seq. ("UCL"), Unfair Conduct; (3) VIOLATION OF CAL. BUS. & PROF. CODE §17500 et seq., False Advertising Law ("FAL"); (4) VIOLATION OF CAL. CIVIL CODE §1750 et seq., Consumer Legal Remedies Act ("CLRA"); (5) UNJUST ENRICHMENT/ BREACH OF QUASI CONTRACT; (6) FRAUDULENT MISREPRESENTATION; (7) NEGLIGENT MISREPRESENTATION; (8) BREACH OF EXPRESS WARRANTY UNDER CAL.COM.CODE §2313; (9) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CAL.COM.CODE §2314(1).

25.     Plaintiff alleges that the SAPPORO ICHIBAN Products contain more than 0g and less than 0.5g of trans fat.

26.     The nutrition label in the "Nutrition Facts" panel contains the statement "0g Trans Fat."  On the front of the packaging, the statement of "0g Trans Fat" is displayed. (Exhibit 1.)

27.     Defendant misleadingly and unlawfully advertises the SAPPORO ICHIBAN Products as containing "0g Trans Fat" on the front of package when, in fact, the products contain more that 0g but less than 0.5g Trans Fat.  It is prohibited by the FDCA to display "0g Trans Fat" on the front. (See *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015); *Hawkins v. Kroger*, 906 F.3d 763 (9th Cir. 2018); *Hawkins v. Kroger Company*, 512 F.Supp.3d 1079 (2021).)

28.     Even if foods contain an ***extremely low level*** or ***insignificant amount*** of trans fat, it is prohibited by the FDCA to display "0g Trans Fat" or "No Trans Fat" on the front label. (see *Reid v. Johnson & Johnson*, 780 F.3d 952, 957 (9th Cir. 2015)

29.     "Outside the nutrition label, claimants may make nutrient content claims such as 'fat free,' 'no fat,' 'zero fat,' or '***negligible source of fat***' on labels where the food contains less than 0.5 grams of fat per serving and certain other conditions are met. *Id*. § 101.62(b).  There is a parallel regulation permitting similar claims about 'saturated fat,' see *id*. § 101.62(c), ***but not about 'trans fat.'***  The FDA considered authorizing a 'trans fat free' claim but decided not to enact the regulation in light of 'insufficient scientific information.'  See Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, Health Claims, 68 Fed.Reg. 41,434, 41,464-65 (July 11, 2003)." (*Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015)

30.     "The FDA has provided guidance about whether a 'No Trans Fat' nutrient content claim is permissible for products containing small amounts of trans fat.  In one of its warning letters, the FDA indicated that 'No Trans Fat' is 'an ***unauthorized nutrient content claim*** ... which has not been defined by FDA.' The agency noted that the letter's recipient could 'make a truthful statement on a

product's label that specifies the amount of trans fat per serving.' See 21 C.F.R. § 101.13(i).  In a second letter, the FDA similarly indicated that 'trans fat-free' is an '***unauthorized nutrient content claim***.'  We defer to the FDA's interpretation of its own rules, even if the product of an informal and non-final process, unless its interpretation is clearly erroneous." (*Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015)

31.    "It is clear, however, that Benecol's label prominently states that Benecol contains "No Trans Fat."  That statement is not true.  Although Benecol may contain ***a relatively small amount of trans fat per serving***, the FDA found that the existing scientific evidence was not sufficient for it to approve 'No Trans Fat' claims.  Despite this finding, McNeil made such a claim.  Given that the FDA has indicated in warning letters that claims like 'No Trans Fat' are not authorized, McNeil cannot shield itself from liability with the FDA's regulations." (*Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (Emphasis added.)

32.    The ingredients of Sapporo Ichiban Miso Ramen contain trans fat.  The ingredients are: Enriched wheat flour (wheat flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), palm oil (TBHQ and citric acid added to protect flavor), Tapioca starch, salt, soy sauce (water, wheat, soybeans, salt, sodium benzoate [preservative]}, guar gum, sodium carbonate, tocopherols, potassium carbonate, Miso powder (contains miso [soybeans, wheat, salt], salt caramel color, agar, monosodium glutamate), salt, monosodium glutamate, sugar, garlic powder, caramel color, dried leek, maltodextrin, spices, tricalcium phosphate, yeast extract, natural ginger flavor, disodium guanylate, disodium inosinate, fermented wheat protein (wheat protein, salt, maltdextrin), natural garlic flavor, citric acid, disodium succinate, paprika (for color), riboflavin, and thiamine mononitrate; Original Spice: Spices (chili pepper, orange peel, sesame seed, poppy seed, sea lettuce, yuzu, Chinese pepper).  May contain milk, eggs, fish, crustacean,

tree nuts and peanut products. (Downloaded on August 9, 2022 from https://sanyofoodsamerica.com/products/sapporo-ichiban-miso-ramen)

33.     The top four vegetable oils consumed in the United States are soybean, canola, palm, and corn oil.  These are referred to as refined, bleached, deodorized oils – or RBD for short – because this describes the process by which they are manufactured.  (Ask the Expert: Concerns about canola oil | The Nutrition Source | Harvard T.H. Chan School of Public Health https://www.hsph.harvard.edu/nutritionsource/2015/04/13/ask-the-expert-concerns-about-canola-oil/ )

34.     Plaintiff does not need to test herself that Sapporo Ichiban Miso Ramen she purchased contained trans fat. (See Journal of Oil Palm Research DOI: https://doi.org/10.21894/jopr.2021.0029, Assessment of Trans Fatty Acid Level in Refined Palm-Based Oils and Commercial Vegetable Oils in the Malaysian Market.)  Federal Register Vol. 80, No. 116 / Wednesday, June 17, 2015/ 34650 provides that:  "As explained in the tentative determination (78 FR 67169), ***all refined edible oils*** contain some trans fat as an unintentional byproduct of their manufacturing process; however, unlike other edible oils, trans fats are an integral component of PHOs and are purposely produced in these oils to affect the properties of the oils and the characteristics of the food to which they are added.  In addition, the trans fat content of PHOs is significantly greater than the amount in other edible oils.  Non-hydrogenated refined oils may contain trans fatty acids as a result of high temperature processing, at levels typically below 2 percent (Ref. 2).  Low levels (below 2 percent) may also be found in fully hydrogenated oils (FHOs) due to incomplete hydrogenation (Ref. 3).  Small amounts (typically around 3 percent) may be found in the fat component of dairy and meat products from ruminant animals (Ref. 4)." (Emphasis added.)

35.     Small amount of trans fats are naturally present in milk and fat of cow and sheep.  Food products made with these ingredients usually only contain low level

of trans fats, but not "0g Trans Fat" or "No Trans Fat."  Like most natural seed oils, palm oil contains very little amounts of trans fats (<1 percent).  Corn oil has 0.25 g trans fat/100g.  (Azizian, H., and Kramer, J. K. G., A Rapid Method for the Quantification of Fatty Acids in Fats and Oil with Emphasis on trans Fatty Acids Using Fourier Transform Near Infrared Spectroscopy (FT-NIR), Lipids, 2005; 40:855-867.; Hénon, G., Kemény, Zs., Recseg, K., Zwobada, F., and Kovari, K., Deodorization of Vegetable Oils. Part I: Modeling the Geometrical Isomerization of Polyunsaturated Fatty Acids, J Am Oil Chem Soc 1999; 76:73-81.; Food Control 44 (2014) 191-197, The analysis of trans fatty acid profiles in deep frying palm oil and chicken fillets with an improved gas chromatography method; Journal of Oil Palm Research DOI: https://doi.org/10.21894/jopr.2021.0029, Assessment of Trans Fatty Acid Level in Refined Palm-Based Oils and Commercial Vegetable Oils in the Malaysian Market.)

36.     The icons of "0g Trans Fat" on the front label of the SAPPORO ICHIBAN Products are false.  The SAPPORO ICHIBAN Products contain trans fats more than 0g.  The SAPPORO ICHIBAN Products are misbranded.

37.     Defendant's claim of "0g Trans Fat" is not authorized by FDA, Defendant cannot shield itself from liability with the FDA's regulations. (See *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015)

38.     During the time period from August of 2018 to December of 2019, Plaintiff purchased Sapporo Ichiban Miso Ramen.  However, it was not until around December of 2019 when she first learned that the SAPPORO ICHIBAN Products contain more than 0g but less than 0.5g of trans fat.

39.     Defendant's representation of "0g Trans Fat" on the front of packages violates both the Federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. §§348, 342 and the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Health & Safety Code §§ 110100, 110290, 110390, 110395, 110398, 110400, 110670, 110680, 110705, 110760, 110765, 110770.

40.     Defendant's misrepresentation of "0g Trans Fat" on the packages of SAPPORO ICHIBAN Products violates the FDCA and the Sherman Law. Defendant violates the illegal prong of the UCL by violating 21 U.S.C. §343(a) (food is misbranded when the label contains false and misleading statements) and numerous provisions of the Sherman law related to misbranded food products; Health & Safety Code §§ 110100, 110290, 110390, 110395, 110398, 110400, 110670, 110680, 110705, 110760, 110765, 110770.

41.     The statement of "0g Trans Fat" appears at two different places on the packaging: the "Nutrition Facts" box, or nutrition label, and the front of the package. (EXHIBIT 1.)

42.     The statement of "0g Trans Fat" listed on the nutrition label is a mandated disclosure when the product contains less than 0.5 grams of Trans Fat.  21 CFR §101.9(c)(2)(ii).  While the nutrition label contains the mandated disclosure, the claims are not considered "nutrient content claims" for purposes of FDA regulations. 21 CFR §101.13(c).

43.     The statement "0g Trans Fat," made outside the nutrition label, is not preempted because it does not impermissibly conflict with federal law.

44.     The statement "0g Trans Fat," made outside the nutrition label, is not allowed by the FDCA and constitutes a misleading advertisement and unfair business practice.  Under 21 USC §§ 331(a) and 333(a) and California Health Safety Code § 110395, the SAPPORO ICHIBAN Products are unmarketable.  The false or misleading advertising and unfair business practices claim are evaluated from the vantage of a reasonable consumer.  A reasonable consumer could likely be deceived by the statement of "0g Trans Fat" on the front of packages.  This statement is construed to misleadingly convey to a reasonable consumer that the product does not contain trans fat.

45.     Plaintiff seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.

Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)

**Plaintiff's Reliance on Defendant's Unlawful, False, and Misleading Statements in the Front Label of Package of the SAPPORO ICHIBAN Products.**

46.   Plaintiff read and relied on the misleading statement of the SAPPORO ICHIBAN Products: "0g Trans Fat."

47.   Based on this reliance, Plaintiff believed the SAPPORO ICHIBAN Products do not contain trans fat.

48.   Plaintiff would not have purchased the SAPPORO ICHIBAN Products absent the misrepresentation on the front label.

49.   In fact, Plaintiff bought the SAPPORO ICHIBAN Products which were prohibited from introduction into commerce because they were misbranded. Plaintiff suffered damages in an amount to equal to the amounts she paid for the SAPPORO ICHIBAN Products she purchased.

50.   Defendant knows that the label of the SAPPORO ICHIBAN Products it markets is material to consumer's decision to purchase the SAPPORO ICHIBAN Products.

51.   Defendant deliberately cultivated the misrepresentations through its marketing of the SAPPORO ICHIBAN Products.

52.   Plaintiff's claim is essentially that, because defendant's label on the SAPPORO ICHIBAN Products did not comply with state and/or federal labeling requirements regarding the Nutrient Content Claims, she believed that the SAPPORO ICHIBAN Products did not contain trans fat.  She was misled by unlawful misbranding by Defendant and purchased the SAPPORO ICHIBAN Products based thereon.  Defendant's SAPPORO ICHIBAN Products are

misbranded and unmarketable.  Plaintiff suffered economic injury because she purchased the products she otherwise would not have.

## DEFENDANT SANYO'S VIOLATIONS OF FEDERAL AND CALIFORNIA STATUTES AND REGULATIONS

53.    21 U.S.C. § 343 provides that a "food shall be deemed misbranded" if, *inter alia,* it contains a "false or misleading label," § 343(a); if information required on the label is "not prominently placed" on the label in comparison with other words, § 343(f).

54.    ***NUTRIENT CONTENT CLAIMS AND DISCLOSURE STATEMENT:*** The misbranded products are in violation of section 403 of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 343] and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101).

55.    Under section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation authorizing the use of such a claim.

56.    Characterizing the level of a nutrient on the food labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient misbrands the product under section 403(r)(1)(A) of the Act.

57.    A nutrient content claim (NCC) is a claim on a food product that directly or by implication characterizes the level of a nutrient in the food (e.g., "low fat," "high in oat bran," or "contains 100 calories"). 21 CFR 101.13(b), 21 CFR 101.13(a)

58.    If a NCC is not included in FDA's regulations, it cannot be used on a label. (21 CFR 101.13(b)) NCCs are specifically defined in 21 CFR 101.13, Subpart D of part 101, and parts 105 and 107. 21 CFR 101.13(b).  Defendant's claim of "0g

Trans Fat" is not an authorized NCC because it is not included in FDA's regulations.

59.    A disclosure statement is a statement that calls the consumer's attention to one or more nutrients in the food that may increase the risk of a disease or health-related condition that is diet related.  The disclosure statement is required when a nutrient content claim is made and when a nutrient in that food exceeds certain prescribed levels.  The disclosure statement identifies that nutrient (e.g. "See nutrition information for sodium content"). 21 CFR 101.13(h)(1)

60.    Disqualifying nutrient levels means the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim. These levels are 13.0 grams (g) of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium, per reference amount customarily consumed, per label serving size, and, only for foods with reference amounts customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g. 21 CFR 101.14 (a)(4)

61.    Under 21 CFR 101.13(h), if a food bears a nutrient content claim and also contains more than 13.0 grams of fat, 4.0 grams of saturated fat, 60 milligrams cholesterol, and 480 milligrams of sodium per reference amount customarily consumed (RACC), per labeled serving (or for a food with a RACC of 30 grams or less or 2 tablespoons or less, per 50 grams), then the food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for _____content" with the blank replaced with the identity of the nutrient exceeding the specified level.

62.    The disclosure statement must be in legible boldface type, in distinct contrast to other printed or graphic matter, and generally in a type size at least as large as the net quantity of contents declaration. It must also be placed immediately adjacent to the claim. 21 CFR 101.13(h)(4)(i)-(ii)

63.     Sapporo Ichiban Miso Ramen which Plaintiff purchased contains 17 g of total fat per serving, 8 g of saturated fat per serving, and 1,640 mg of sodium per serving, exceeding the disqualifying levels.  The front label does not bear a statement: "See nutrient information for total fat, saturated fat, and sodium contents" in violation of 21 CFR 101.13(h).  Defendant's product is misbranded and therefore illegal to sell, lacking economic value, and legally worthless. Plaintiff would not have purchased Sapporo Ichiban Miso Ramen had Defendant included on the front of the package the "See nutrition information for total fat, saturated fat, and sodium contents" disclosure required by the U.S. Food and Drug Administration. See 21 C.F.R. §§101.13(h).  Plaintiff relied on the absence of the disclosure in purchasing the product.

64.     Even if the third parties advertise falsely the SAPPORO ICHIBAN products, Defendant SANYO as well as the third parties violates the following codes:

• California Health & Safety Code § 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

• California Health & Safety Code § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

• California Health & Safety Code § 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .")


### *Non-Purchased Products Are "Substantially Similar."*

65.     Defendant's seven varieties of packaged noodle products: Sapporo Ichiban Hot and Spicy Chicken, Sapporo Ichiban Shio Ramen, Sapporo Ichiban Tonkotsu Ramen, Sapporo Ichiban Chow Mein, Sapporo Ichiban Shoyu Bowl, Sapporo Ichiban Miso Bowl, and Sapporo Ichiban Shio Bowl are substantially similar to the purchased product of Sapporo Ichiban Miso Ramen for which Plaintiff has

standing. The eight products including the purchased product are of the same kind of noodle ramen.  They are comprised of largely the same ingredients.  Each of the eight products bears the same unauthorized mislabeling, "0g Trans Fat."  Each of the eight products contains refined palm oil, and milk.  Each violates 21 CFR 101.13(h), without the disclosure statement.  Total fat, saturated fat, and/or sodium of each of the eight products exceed the disqualifying levels.

66.     The eight products are substantially similar.  Accordingly, Plaintiff has standing to bring claims as to unpurchased products which the general public have purchased.  Plaintiff brings this lawsuit on behalf of the purchasers of the seven products.  (See *Anderson v. Jamba Juice Company*, 888 F.Supp.2d 1000, 1006 (2012).)

| Sapporo Ichiban | Total Fat, g ** | Saturated Fat, g ** | Sodium, mg ** |
|---|---|---|---|
| Hot and Spicy Chicken | 21 | 10 | 1,290 |
| Miso Ramen | 19 | 9 | 1,800 |
| Shio Ramen | 18 | 8 | 2,140 |
| Tonkotsu Ramen | 20 | 9 | 1,530 |
| Chow Mein | 21 | 10 | 870 |
| Shoyu Bowl | 12* | 6 | 2,170 |
| Miso Bowl | 12* | 6 | 2,100 |
| Shio Bowl | 13 | 6 | 2,210 |

* Total Fat does not exceed the disqualifying level of 13g per serving.

** per serving.

67.     Each of the eight products contains refined palm oil.  Each of the products unquestionably contains trans fat. (See Federal Register Vol. 80, No. 116 / Wednesday, June 17, 2015/ 34650 ["As explained in the tentative determination (78 FR 67169), ___all refined edible oils___ contain some trans fat.].)  Therefore, Plaintiff does not demand Defendant to substantiate that each of the eight products does not contain trans fat.  California law does not provide for a private cause of

action to enforce the substantiation requirements of California's unfair competition and consumer protection laws. (See *Kwan v. Sanmedica International*, 854 F.3d 1088 (2017).)  With respect to the term "zero," *Lee v. Conagra Brands, Inc.* 958 F. 3d 70, 78 (1st Circuit, 2020) provides that:

> "Lee has alleged that Conagra's representation that the product was "100% Natural" suggested to her that Wesson Oil was GMO-free, and that she was thereby deceived.  In its reference to the draft guidance mentioned above, Conagra skips relevant context; the FDA also suggested that labels indicating GMOs' absence might be misleading:
>
> > [T]he term "[GMO] free" may be difficult to use without being false or misleading.  ***If it implies "zero," it may be very difficult to substantiate.  The adventitious presence of bioengineered material may make a "zero" claim inaccurate.***  Further, these terms would be misleading if they imply that the food is superior because the food is not bioengineered.  Draft Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering; Availability, 66 Fed. Reg. 4,839, 4,840 (Jan. 18, 2001)." (Emphasis added.)

68.     The misbranded products are in violation of section 403 of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 343] and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101).

69.     21 U.S.C. 331(a) prohibits the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

70.     No state or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce:  "any requirement respecting any claim of the type described in section

343(r)(1) of this title, made in the label or labeling of food *that is not identical* to the requirement of section 343(r) of this title . . . ." (21 U.S.C. § 343-1(a) (5))

71.     By manufacturing, advertising, distributing, and selling misbranded products, the SAPPORO ICHIBAN Products, Defendant SANYO has violated California Health & Safety Code §§ 110100, 110290, 110390, 110395, 110398, 110400, 110670, 110680, 110705, 110760, 110765, 110770.

72.     In addition, Defendant has violated the standards set by 21 U.S.C. § 343 and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101), all of which have been adopted by reference into the Sherman Law, California Health and Safety Code.

73.     California's Sherman Laws adopt the federal labeling requirements as the food labeling requirements of the state. Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."): Any food is misbranded if its labeling is false or misleading in any particular, Cal. Health & Safety Code § 110660.

74.     California Health and Safety Code § 110390 states that: "It is unlawful for any person to disseminate any false advertisement or any food ….. An advertisement is false if it is false or misleading in any particular."

75.     California Health and Safety Code § 110395 states that: "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food …..  that is falsely advertised."

76.     California Health and Safety Code § 110398 states that: "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."

**CLASS ACTION ALLEGATIONS**

77.     Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses), for the time period from November 2019 until the date notice is disseminated to the class ("Class Period"), as defined as follows:

**The Nationwide Class is defined as follows:**

All U.S. citizens who purchased the SAPPORO ICHIBAN Product in their respective state of citizenship for personal and household use and not for resale during the Class Period.

**The California sub-class is defined as follows:**

All California citizens who purchased the SAPPORO ICHIBAN Product in California for personal and household use and not for resale during the Class Period.

78.     The Class and Subclass described in this complaint will jointly be referred to as the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Class and Subclass will jointly be referred to as "Class Members."

79.     Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

80.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

81.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believe the total number of Class members is at least in the hundreds and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

82.     Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Product appropriate with respect to the Classes as a whole. In particular, Defendant has failed to disclose the true nature of the Product being marketed as described herein.

83.     There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

a.      Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the SAPPORO ICHIBAN Products;

b.      Whether Defendant violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;

c.      Whether Defendant's conduct violates public policy; whether Defendant's conduct violates state and federal food statutes or regulations;

d.      Whether the Product is misbranded;

e.      Whether the relief requested are common for the proper amount of restitution, and punitive damages; the proper injunctive relief, including a corrective advertising campaign; and the proper amount of attorneys' fees and costs.

84.     These common questions of law and fact predominate over questions that affect only individual Class Members.

85.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the SAPPORO ICHIBAN Product, and suffered economic injury because the Product was and still is misrepresented.  Absent Defendant's business practice of deceptively and unlawfully labeling the SAPPORO ICHIBAN Product, Plaintiff and Class Members would not have purchased the SAPPORO ICHIBAN Product.

86.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel with substantial experience in handling complex class action litigation in general and scientific claims specifically, including for foods and dietary supplements.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

87.     Plaintiff and the members of the Classes suffered, and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Classes is impracticable.  Even if individual Class member had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The

conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

88.     Adjudication of individual Class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

89.     Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

90.     As a result of the foregoing, class treatment is appropriate under CCP 382.

**First Cause of Action**

**Violation of California's Unfair Competition Law, California Business and Professions Code § 17200 _et seq._ Unlawful Conduct Prong**

**(By Plaintiff Sue Shin, on behalf of herself, all other similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)**

91.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

92.     **_FIRST UNLAWFUL BUSINESS ACT_**:  Defendant violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "_unlawful_" business act or practice by selling the SAPPORO ICHIBAN Products.  The SAPPORO ICHIBAN Products make the claim of "0g Trans Fat" on their label.  These claims are prohibited to use for SAPPORO ICHIBAN Products.  The products are misbranded.   It is unlawful for Defendants to sell the misbranded products in the market. 21 USC §§ 331(a) and 333(a).  Defendants violated California Health &

Safety Code §§ 110100, 110290, 110390, 110395, 110398, 110400, 110670, 110680, 110705, 110760, 110765, 110770.  *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 471-72 (9th Cir. 2017) held "[t]he best reading of California precedent is that the ***reasonable consumer test*** is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." (See *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052 (2017); *Hadley v. Kellogg Sales Co.*, Case No. 16-CV-04955-LHK, 2019 WL 3804661, at *23 (N.D. Cal. Aug. 13, 2019); *Silver v. BA Sports Nutrition, LLC*, Case No. 20-cv-00633-SI, 2020 WL 2992873, at *4 (N.D. Cal. June 4, 2020).)  ***The reasonable consumer test does not apply to this claim under the unlawful prong of the UCL*** because the reasonable consumer test is not an element of a violation of 21 C.F.R. §§101.62(a)(2) or 101.13(i)(3). (see *Hawkins v. Kroger Company*, 512 F.Supp.3d 1079 (2021) (United States District Court, S.D. California. January 11, 2021)

An actual reliance requirement does not apply to this UCL action that is not based upon a fraud theory.  Defendant's violation of 21 C.F.R. §§101.62(a)(2) or 101.13(i)(3) caused in the loss of money. (*Medrazo v. Honda of North Hollywood*, 205 Cal.App.4th 1, 12 (2012).)

93.     ***SECOND UNLAWFUL BUSINESS ACT***:

Defendant's seven varieties of packaged noodle products: Sapporo Ichiban Hot and Spicy Chicken, Sapporo Ichiban Shio Ramen, Sapporo Ichiban Tonkotsu Ramen, Sapporo Ichiban Chow Mein, Sapporo Ichiban Shoyu Bowl, Sapporo Ichiban Miso Bowl, and Sapporo Ichiban Shio Bowl are substantially similar to the purchased product of Sapporo Ichiban Miso Ramen for which Plaintiff has standing.  Each of the eight products contains refined palm oil, and milk.  Each violates 21 CFR 101.13(h), without the disclosure statement.  Total fat, saturated fat, and/or sodium of each of the eight products exceed the disqualifying levels.

*Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 471-72 (9th Cir. 2017) held "[t]he best reading of California precedent is that the ***reasonable consumer test*** is a

requirement under the UCL's unlawful prong only when it is an element of the predicate violation." (See *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052 (2017); *Hadley v. Kellogg Sales Co.*, Case No. 16-CV-04955-LHK, 2019 WL 3804661, at *23 (N.D. Cal. Aug. 13, 2019); *Silver v. BA Sports Nutrition, LLC*, Case No. 20-cv-00633-SI, 2020 WL 2992873, at *4 (N.D. Cal. June 4, 2020).) ***The reasonable consumer test does not apply to this claim under the unlawful prong of the UCL*** because the reasonable consumer test is not an element of a violation of 21 CFR 101.13(h) and California Health & Safety Code §§ 110100, 110290, 110390, 110395, 110398, 110400, 110670, 110680, 110705, 110760, 110765, 110770. (see *Hawkins v. Kroger Company*, 512 F.Supp.3d 1079 (2021) (United States District Court, S.D. California. January 11, 2021)

An actual reliance requirement does not apply to this UCL action that is not based upon a fraud theory.  Defendant's violation of 21 CFR 101.13(h) caused in the loss of money. (*Medrazo v. Honda of North Hollywood*, 205 Cal.App.4th 1, 12 (2012).)  Each of the eight products violates 21 CFR 101.13(h), without the disclosure statement.  Total fat, saturated fat, and/or sodium of each of the eight products exceed the disqualifying levels.  Plaintiff would not have purchased Sapporo Ichiban Miso Ramen had Defendant included on the front of the package the "See nutrition information for total fat, saturated fat, and sodium contents" disclosure required by the U.S. Food and Drug Administration. See 21 C.F.R. §§101.13(h). (*Bishop v. 7-Eleven, Inc.*, 651 Fed.Appx. 657 (9th Cir. 2016).)  Alternatively speaking, Plaintiff relied on the absence of the disclosure in purchasing the product.

94.  ***THIRD UNLAWFUL BUSINESS ACT***:  Defendant misleadingly advertises the SAPPORO ICHIBAN Products in their label.  Defendant violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "*unlawful*" business act or practice by, *inter alia*, making the material misrepresentations regarding the SAPPORO ICHIBAN Products under 1750 *et seq.* (the CLRA) and

Cal. Bus. & Prof. Code §17500 (FAL).  Reasonable consumers are misled that the SAPPORO ICHIBAN Products do not contain trans fat because the products claim "0g Trans Fact."  Reasonable consumers do not believe that the products contain "some" trans fat.  (*Hawkins v. Kroger Company*, 512 F.Supp.3d 1079, 1090 (2021).)

95.     Plaintiff also seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)  Plaintiff requests this Court to enter a judgment against Defendant that: orders Defendant to immediately cease its wrongful conduct as set forth above; enjoins Defendant from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Defendant to engage in a corrective notice campaign. Plaintiff seeks restitution under the UCL.

## Second Cause of Action

**Violation of California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* Unfair Conduct Prong**

**(By Plaintiff Sue Shin, on behalf of herself, all other similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)**

96.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

97.     The foregoing conduct also constitutes "*unfair*" business acts and practices within the meaning of Cal. Bus. & Prof. Code §17200.  Defendant's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated.  Defendant's conduct caused and continues to cause substantial injury to Plaintiff.

98.    Defendant's labeling and advertising of the SAPPORO ICHIBAN Products are likely to mislead reasonable consumers that the products do not contain trans fat.

99.    Defendant either knew or reasonably should have known that the claims on the labels of the SAPPORO ICHIBAN Products were likely to mislead reasonable consumers.

100.   In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to sell the SAPPORO ICHIBAN Products through unlawful, and unfair acts and practices and to commence a corrective advertising and labeling campaign.

101.   Plaintiff also seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)  Plaintiff requests this Court to enter a judgment against Defendant that: orders Defendant to immediately cease its wrongful conduct as set forth above; enjoins Defendant from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Defendant to engage in a corrective notice campaign.

**Third Cause of Action**
**Violation of California's False and Misleading Advertising Law, California Business and Professions Code § 17500 *et seq.***
**(By Plaintiff Sue Shin, on behalf of herself, all other similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)**

102.   Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

103.   California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive and/or mislead members of the public to purchase products and services such as the SAPPORO ICHIBAN Products.

104.   Defendant disseminated, through common advertising, misleading statements about the SAPPORO ICHIBAN Products and Defendant knew or should have known that the SAPPORO ICHIBAN Products' labels did not conform to the advertisements or representations regarding the SAPPORO ICHIBAN Products.  Plaintiff saw and relied upon the advertisements and misrepresentations.

105.   As alleged herein, Defendant, in its labeling and advertising of the SAPPORO ICHIBAN Products, makes misleading advertising claim, as it mislead consumers that the SAPPORO ICHIBAN Products do not contain trans fat.

106.   In reliance on these misleading advertising claims, Plaintiff purchased and used the SAPPORO ICHIBAN Products without the knowledge that the product contains trans fat.

107.   Defendant knew or should have known that the labeling and marketing of the SAPPORO ICHIBAN Products was likely to mislead consumers.

108.   Plaintiff also seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)  Plaintiff requests this Court to enter a judgment against Defendant that: orders Defendant to immediately cease its wrongful conduct as set forth above; enjoins Defendant from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Defendant to engage in a corrective notice campaign.

## Fourth Cause of Action

## Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

## (By Plaintiff Sue Shin, on behalf of herself, all other similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)

109.   Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

110.   This cause of action arises under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*  Plaintiff is a consumer as defined by Cal. Civ. Code §1761(d).  Defendant's SAPPORO ICHIBAN Products constitutes "product" as defined by Cal. Civ. Code §1761(a) and (b).  At all times relevant hereto, Defendant constituted "persons" as that term is defined in Cal. Civ. Code §1761(c), and Plaintiff's purchases of the SAPPORO ICHIBAN Products constitute "transactions," as that term is defined in Cal. Civ. Code §1761(e).

111.   Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a), in transactions with Plaintiff that were intended to result or which resulted in the sale of the SAPPORO ICHIBAN Products to consumers:

(i) In violation of Cal. Civ. Code §1770(a)(5), Defendant's acts and practices constitute misrepresentations that the SAPPORO ICHIBAN Products in question have characteristics, benefits or uses which they do not have;

(ii) In violation of Cal. Civ. Code §1770(a)(7), Defendant misrepresented that the SAPPORO ICHIBAN Products are of particular standard, quality and/or grade, when they are of another; and

(iii) In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised the SAPPORO ICHIBAN Products with the intent not to sell them as advertised or represented.

(iv) In violation of Cal. Civ. Code §1770(a)(16), Defendant represented that "the subject of a transaction has been supplied in accordance with a previous representation when it has not."

112.   Defendant's representations are misleading and in violation of the CLRA.

113.   In addition, pursuant to Civil Code §1780(a)(2), Plaintiff is entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770:

(1) enjoining Defendant from continuing to engage in the deceptive practices described above;

(2) requiring Defendant to provide public notice of the true nature of the SAPPORO ICHIBAN Products; and

(3) enjoining Defendant from such deceptive business practices in the future.

114.   Plaintiff also seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)

115.   Plaintiff is entitled to recover attorneys' fees, and costs.  Plaintiff seeks restitution under the CLRA.  Plaintiff is a senior citizen over the age of 65. The CLRA allows an award of up to $5,000 in damages to be tacked on by the court.

**Fifth Cause of Action:  Unjust Enrichment**
**(By Plaintiff Sue Shin, on behalf of herself, all others similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)**

116.   Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

117.   Plaintiff brings this claim for unjust enrichment on behalf of the Class.

118.   As a direct and proximate result of Defendant's acts set forth herein, Defendant has been unjustly enriched.

119.   As a result of Defendant's misleading labeling, advertising, marketing, and sales of the SAPPORO ICHIBAN Product, Defendant unjustly enriched itself at the expense of Plaintiff and the Class members, through Plaintiff's and the Class members' payment of the purchase price for the products.

120.   Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class members, in light of the fact that the SAPPORO ICHIBAN Product that Plaintiff and the Class members purchased were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members for the monies paid to Defendant for the SAPPORO ICHIBAN Product.

121.   Plaintiff and the Class members seek restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and compensation Defendant obtained from its improper conduct alleged herein.

122.   Plaintiff contends that the deception is the false and misleading label, and the injury is the purchase price.

123.   In November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving.  SANYO knew and should have known that the slogan of "0g Trans Fat" is false and misleading.  Despite of its knowledge, Defendant SANYO has kept the slogan of "0g Trans Fat" to induce reasonable consumers to believe the SAPPORO ICHIBAN Products do not contain trans fat at all.

//

//

**Sixth Cause of Action for Fraudulent Misrepresentation**

**(By Plaintiff Sue Shin, on behalf of herself, all others similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)**

124.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

125.   Defendant made representations to Plaintiff and the Classes in advertising the SAPPORO ICHIBAN Products, with the slogan of "0g Trans Fat.  Defendant made representations in their advertisements.

126.   As heretofore alleged, the representations made by Defendant were in fact false.

127.   When Defendant made these misrepresentations, it knew them to be false and made these misrepresentations with the intention to deceive and defraud Plaintiff and members of the Classes and to induce Plaintiff and members of the Classes to act in reliance on these misrepresentations in the manner heretofore and hereafter alleged, or with the expectation that Plaintiff and members of the Classes would so act.  Plaintiff and members of the Classes, at the time these representations were made by Defendant, were ignorant of the falsity of Defendant' representations and believed them to be true.   In reliance on these representations, Plaintiff and members of the Classes were induced to and did purchase the SAPPORO ICHIBAN Products.  Plaintiff's reliance on Defendant' representations was reasonable in light of the knowledge and experience of Plaintiff and members of the Classes.

128.   In November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving.  SANYO knew and should have known that the slogan of "0g Trans Fat" is false and misleading.  Despite of its knowledge, Defendant SANYO has kept the slogan of "0g Trans Fat" to induce

reasonable consumers to believe the SAPPORO ICHIBAN Products do not contain trans fat at all.

129.   As a proximate result of the fraudulent conduct of Defendant in this complaint, Plaintiff and members of the Classes were induced to spend money in the purchase of the SAPPORO ICHIBAN Products without knowing the true nature of the SAPPORO ICHIBAN Products.

130.   As a consequence of Defendant's fraudulent misrepresentations, Plaintiff and the members of the Classes have been injured and are entitled to damages.

131.   The conduct of Defendant was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendant with the intention on the part of Defendant of thereby depriving Plaintiff and members of the Classes of property or legal rights causing injury.  Defendant's conduct constitutes despicable conduct which was carried on by Defendant with a willful and conscious disregard of the rights of Plaintiff and members of the Classes, so as to justify an award of exemplary or punitive damages.

132.   Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting these actions against Defendant under California's Code of Civil Procedure § 1021.5 and other applicable law in part because:

(a) a successful outcome in these actions will result in the enforcement of important rights affecting the public interest by maintaining the integrity of representations made concerning the SAPPORO ICHIBAN Products;

(b) these actions will result in a significant benefit to the general public by bringing to a halt unlawful, unfair, deceptive, and misleading activity and by causing the return of ill-gotten gains obtained by Defendant;

(c) unless these actions are prosecuted, members of the general public will not recover those monies, and many consumers would not be aware that they were victimized by Defendant's wrongful acts and practices;

(d) unless these actions are prosecuted, Defendant will continue to mislead consumers about the true nature of the SAPPORO ICHIBAN Products; and

(e) an award of attorneys' fees and costs is necessary for the prosecution of these actions and will result in a benefit to each members of the Classes, and consumers in general.

## Seventh Cause of Action for Negligent Misrepresentation
## (By Plaintiff Sue Shin, on behalf of herself, all others similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)

133.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

134.   As heretofore alleged, Defendant made representations to Plaintiff and the Classes in advertising the SAPPORO ICHIBAN Products with the slogan of "0g Trans Fat.

135.   As heretofore alleged, the representation made by Defendant was in fact false and misleading.

136.   When Defendant made these misrepresentations, Defendant had no reasonable ground for believing them to be true as set forth herein.

137.   Defendant made these representations with the intention of inducing Plaintiff and members of the Classes to act in reliance on these representations in the manner hereafter alleged, or with the expectation that they would so act.

138.   Plaintiff and members of the Classes, at the time these representations were made by Defendant, were ignorant of the falsity of Defendant' representations and believed them to be true.   In reliance on these representations, Plaintiff and members of the Classes were induced to and did purchase the SAPPORO ICHIBAN Products.  Plaintiff's reliance on Defendant' representations was

reasonable in light of the knowledge and experience of Plaintiff and members of the Classes.

139.   As a proximate result of the fraudulent conduct of Defendant, Plaintiff and members of the Classes were induced to spend money in the purchase of the SAPPORO ICHIBAN Products without knowing the true nature the SAPPORO ICHIBAN Products.

140.   As a consequence of Defendant's negligent misrepresentations, Plaintiff and the members of the Classes have been injured and are entitled to damages.

141.   In November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving.  SANYO knew and should have known that the slogan of "0g Trans Fat" is false and misleading.  Despite of its knowledge, Defendant SANYO has kept the slogan of "0g Trans Fat" to induce reasonable consumers to believe the SAPPORO ICHIBAN Products do not contain trans fat at all.

**Eighth Cause of Action:  Breach of Express Warranty**
**(CAL.COM.CODE § 2313.)**
**(By Plaintiff Sue Shin, on behalf of herself, all others similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)**

142.   Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

143.   Defendant SAPPORO ICHIBAN made an affirmation of fact or promise or provided a description of its SAPPORO ICHIBAN Products by including the slogan of "0g Trans Fat."

144.   The promise or description of "0g Trans Fat" formed part of the basis of the bargain.

145.   Defendant SAPPORO ICHIBAN sold the SAPPORO ICHIBAN Products to Plaintiff and the Class Members.

146.   Defendant SAPPORO ICHIBAN breached the express warranty.

147.   Plaintiff and the Class members did not receive the SAPPORO ICHIBAN Products as warranted by defendant SAPPORO ICHIBAN.

148.   The breach caused economic injury to Plaintiff and the Class members in an amount to be determined at trial.

149.   In November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving.  SANYO knew and should have known that the slogan of "0g Trans Fat" is false and misleading.  Despite its knowledge, Defendant SANYO has kept the slogan of "0g Trans Fat" to induce reasonable consumers to believe the SAPPORO ICHIBAN Products do not contain trans fat at all.

### Ninth Cause of Action
### Breach of Implied Warranty of Merchantability
### Under Cal. Com. Code 2314(1)
### (By Plaintiff Sue Shin, on behalf of herself, all others similarly situated, and the general public against Defendant SANYO and Defendant TAKEO SATO)

150.   Plaintiff incorporates by reference all preceding paragraphs.

151.   The Product was manufactured, labeled and sold by defendant SAPPORO ICHIBAN or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

152.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

153.   The SAPPORO ICHIBAN Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable.

154.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

155.   In November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving.  SANYO knew and should have known that the slogan of "0g Trans Fat" is false and misleading.  Despite of its knowledge, Defendant SANYO has kept the slogan of "0g Trans Fat" to induce reasonable consumers to believe the SAPPORO ICHIBAN Products do not contain trans fat at all.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, pray for judgment against Defendant SANYO and Defendant TAKEO SATO as to each and every cause of action, including:

a.   An order certifying this action as a class action;

b.   An order maintaining this action as a class action and/or an order maintaining a particular issue class action;

c.   An order appointing Plaintiff as the class representative and the Law Office of Juan Hong as Class Counsel;

d.   An order compelling Defendants to conduct a corrective advertising campaign;

e.   An order compelling Defendants to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending SAPPORO ICHIBAN Products;

f.   An order awarding restitution in the amount of the purchase price paid by the class members for the Product;

g.      An award for punitive damages;

h.      An award of attorneys' fees and costs pursuant to Code of Civil Procedure Section 1021.5 and CLRA; and

i.      An order providing for all other such further relief as may be just and proper. Plaintiff hereby demand a trial by jury on all issues so triable.

**JURY TRIAL REQUESTED**

         Plaintiff is entitled to a trial by jury for her claims.

DATED: November 10, 2023                          LAW OFFICE OF JUAN HONG

                                                 /s/ Juan Hong
                                                 JUAN HONG
                                                 4199 Campus Drive Suite 550
                                                 Irvine, CA 92612
                                                 Telephone: (949) 334-7710
                                                 Fax: (949) 335-6647

## DECLARATION OF SUE SHIN PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

I, Sue Shin, declare as follows:

1.      I am a plaintiff in the above-entitled action.

2.      Defendant SANYO FOODS CORP. OF AMERICA has done and is doing business in the County of Los Angeles, California.  Such Business includes the distributing, marketing, labeling, packaging and sale of the SAPPORO ICHIBAN Products.  Furthermore, during the time periods from August of 2018 to December of 2019, I purchased the SAPPORO ICHIBAN Products in Los Angeles, California, from markets and groceries.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10th day of November 2023, at Los Angeles, California.

DATED: November 10, 2023

Sue Shin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT  1.

26
27
28



## Nutrition Facts

Serving Size 1 Package or 3.55 oz. (101 g)
Servings Per Container 1

**Amount Per Serving**

**Calories** 460    Calories from Fat 150

| | % Daily Value* |
|---|---|
| **Total Fat** 17 g | 26% |
| Saturated Fat 8 g | 40% |
| Trans Fat 0 g | |
| **Cholesterol** 0 mg | 0% |
| **Sodium** 1,640 mg | 68% |
| **Total Carbohydrate** 64 g | 21% |
| Dietary Fiber 3 g | 12% |
| Sugars 1 g | |
| **Protein** 10 g | |

| | | |
|---|---|---|
| Vitamin A 0% | • | Vitamin C 0% |
| Calcium 6% | • | Iron 13% |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65 g | 80 g |
| Saturated Fat | Less than | 20 g | 25 g |
| Cholesterol | Less than | 300 mg | 300 mg |
| Sodium | Less than | 2,400 mg | 2,400 mg |
| Total Carbohydrate | | 300 g | 375 g |
| Dietary Fiber | | 25 g | 30 g |

Calories per gram:
Fat 9 • Carbohydrate 4 • Protein 4

BEST BY

### COOKING DIRECTIONS

In a small pot bring
**2 cups (500 ml)** of water
to a boil. Add noodles,
break them up if desired.
Cook 3 minutes, stir
occasionally.

Remove from heat.
Stir in seasoning from
soup base packet and
sprinkle original spice

Try adding an egg,
vegetables, or meat as
desired.

**INGREDIENTS: ORIENTAL NOODLES:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), PALM OIL (TBHQ AND CITRIC ACID ADDED TO PROTECT FLAVOR), TAPIOCA STARCH, SALT, SOY SAUCE (WATER, WHEAT, SOYBEANS, SALT, SODIUM BENZOATE [PRESERVATIVE]), GUAR GUM, SODIUM CARBONATE, TOCOPHEROLS, POTASSIUM CARBONATE.
**SOUP BASE:** MISO POWDER (CONTAINS MISO [SOYBEANS, RICE, BARLEY], MODIFIED TAPIOCA STARCH, SOY SAUCE [SOYBEANS, WHEAT, SALT], SALT, CARAMEL COLOR, MONOSODIUM GLUTAMATE), SALT, MONOSODIUM GLUTAMATE, GARLIC POWDER, CARAMEL COLOR, DRIED LEEK, MALTODEXTRIN, SPICES, TRICALCIUM PHOSPHATE, YEAST EXTRACT, NATURAL GINGER FLAVOR, DISODIUM GUANYLATE, DISODIUM INOSINATE, FERMENTED WHEAT PROTEIN (WHEAT GLUTEN, SALT, MALTODEXTRIN, NATURAL GARLIC FLAVOR, CITRIC ACID), DISODIUM SUCCINATE, PAPRIKA (FOR COLOR), RIBOFLAVIN, THIAMINE MONONITRATE, ... ORANGE PEEL.

