Caitlin C. Blanche (SBN 254109)
caitlin.blanche@klgates.com
Ashley Song (SBN 327688)
ashley.song@klgates.com
K&L GATES LLP
1 Park Plaza
Twelfth Floor
Irvine, California 92614
Telephone: +1 949 253 0900
Facsimile: +1 949 253 0902

Attorneys for Defendants
SANYO FOODS CORP. OF AMERICA,
TAKEO SATO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUE SHIN, on behalf of herself, all others similarly situated, and the general public<br><br>        Plaintiffs,<br><br>v.<br><br>SANYO FOODS CORP. OF AMERICA, TAKEO SATO, and DOES 1 through 10,<br><br>        Defendants. | Case No. 2:23-cv-10485-SVW-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS**<br><br>Concurrently filed with:<br>1. Notice of Motion;<br>2. Declaration of A. Song;<br>3. Request for Judicial Notice;<br>4. [Proposed] Order<br><br>Date: March 18, 2024<br>Time: 1:30 p.m.<br>Dept.: 10A |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

II.   PLAINTIFF'S ALLEGATIONS ...........................................................2

III.  RELEVANT PROCEDURAL HISTORY ..............................................3

    A.   Plaintiff's Individual Action Pending in Los Angeles Superior Court ......................................................................................................3

IV.   LEGAL STANDARD ..........................................................................4

V.    LEGAL ARGUMENT ..........................................................................4

    A.   Plaintiff Has Not Articulated An Injury for Article III Standing Purposes. ............................................................................................4

    B.   Plaintiff Fails to Plausibly Plead the Elements of Her Claims. ...........7

        i.    Plaintiff Fails to Allege that the Labeling At Issue Is Likely To Deceive a Reasonable Consumer. ..........................................7

        ii.   *Reid* and *Hawkins* Are Inapplicable. ..........................................9

        iii.  Plaintiff's UCL Claims Fail for Additional Reasons. ..............10

        iv.   Plaintiff's FAL and CLRA Claims Are Time-Barred. .............11

        v.    Plaintiff's Unjust Enrichment Claim Fails for Several Reasons. .............................................................................12

        vi.   Plaintiff's Allegations Do Not Support Her Claims for Fraudulent and Negligent Misrepresentation. ...........................13

        vii.  Plaintiff's Breach of Express and Implied Warranties Fail......14

    C.   The Products Do Not Require a Disclosure, and To the Extent Plaintiff Is Attempting To Expand Labeling Requirements, Her Claims Are Pre-Empted. ....................................................................16

    D.   Plaintiff Has Wrongfully Named Takeo Sato as a Defendant in the Complaint, Requiring His Dismissal. ...................................................17

    E.   This Action Should Be Dismissed or Stayed Under the *Colorado River* Doctrine to Further the Interests of Wise Judicial Administration......................................................................................17

        i.    The *Colorado River* Doctrine Applies......................................17

        ii.   The *Colorado River* Factors Support Dismissal or A Stay. .....18

VI.   CONCLUSION ..................................................................................20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO
FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014) .................................................................... 8

*Am. Int'l Underwriters, Inc. v. Continental Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) .............................................................. 19, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 4

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...................................................................... 12

*Backus v. Gen. Mills, Inc.*,
  122 F. Supp. 3d 909 (N.D. Cal. 2015) ........................................................ 15

*Beasley v. Conagra Brands, Inc.*,
  374 F. Supp. 3d 869 (N.D. Cal. 2019) ........................................................ 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 4

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .................................................................... 13

*Canopus Biopharma, Inc. v. Supportive Therapeutics, LLC*,
  2016 WL 7438795 (C.D. Cal. Mar. 25, 2016) ........................................ 19, 20

*Chong v. Kind LLC*,
  585 F. Supp. 3d 1215 (N.D. Cal. 2022) ...................................................... 17

*Clemens v. DaimlerChrysler Corp.*,
  534 F. 3d 1017 (9th Cir. 2008) ................................................................... 15

*In re Countrywide Fin. Corp. Derivative Litig.*,
  542 F. Supp. 2d 1160 (C.D. Cal. 2008) ...................................................... 18

*Effinger v. Ancient Organics LLC*,
  657 F. Supp. 3d 1290 (N.D. Cal. 2023) ...................................................... 16

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

*El Centro Foods, Inc. v. Nazarian*,
  2010 WL 1710286 (C.D. Cal. Apr. 21, 2010) ................................................. 19

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) .......................................................... 11

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ............................................................................ 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ......................................................................................... 4

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ................................................ 6

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) .................................................................................... 15

*Hawkins v. Kellogg Company*,
  224 F. Supp. 3d 1002 (S.D. Cal. 2016) ......................................................... 10

*Hawkins v. Kroger Co.*,
  512 F.Supp.3d 1079 (S.D. Cal. 2021) ............................................................. 9

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ........................................................................... 9

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  2019 WL 2515919 (N.D. Cal. June 18, 2019) ................................................. 8

*Hill v. Roll Internat. Corp.*,
  195 Cal. App. 4th 1295 (2011) ........................................................................ 9

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
  315 Fed. Appx. 603 (9th Cir. 2008) .............................................................. 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ....................................................................... 13

*Krieger v. Atheros Commc'ns, Inc.*,
  776 F. Supp. 2d 1053 (N.D. Cal. 2011) .................................................... 17, 19

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ......................................................... 12

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO
FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ................................................................. 7

*Marshall v. PH Beauty Labs, Inc.*,
    2015 WL 3407906 (C.D. Cal. May 27, 2015) ....................................... 11

*Mauro v. Gen. Motors Corp.*,
    2008 WL 2775004 (E.D. Cal. July 15, 2008) ....................................... 15

*McKinnis v. Kellogg USA*,
    2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..................................... 15

*Melt Franchising, LLC v. PMI Enterprises*, *Inc.*,
    2008 WL 4811097 (C.D. Cal. Oct. 27, 2008) ...................................... 18

*Michael v. Honest Co. Inc.*,
    2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ........................................ 14

*Milman v. FCA U.S., LLC*,
    2018 WL 5867481 (C.D. Cal. Aug. 30, 2018) ..................................... 13

*Munning v. Gap, Inc.*,
    2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) ...................................... 12

*O'Connor v. Uber Techs., Inc.*,
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ....................................... 17

*Parks v. Ainsworth Pet Nutrition*,
    2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) .......................................... 8

*Pels v. Keurig Dr. Pepper*, Inc.,
    2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ......................................... 6

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ............................................................. 16

*Plumlee v. Pfizer, Inc.*,
    2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ....................................... 11

*R.R. St. & Co., Inc. v. Transp. Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) ............................................................... 18

*Reid v. Johnson & Johnson*,
    780 F. 3d 952 (9th Cir. 2015) ......................................................... 9, 10

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016)..........................................................12

*Sea Prestigo, LLC v. M/Y Triton*,
   787 F. Supp. 2d 1116 (S.D. Cal. 2011) ............................................................19

*Smith Micro Software, Inc. v. Reliance Commc'ns, LLC*,
   2020 WL 225074 (C.D. Cal. Jan. 14, 2020)....................................................12

*Smith v. Allmax Nutrition, Inc.*,
   2015 WL 9434768 (E.D. Cal. Dec. 24, 2015)..................................................12

*Travelers Indem. Co. v. Madonna*,
   914 F.2d 1364 (9th Cir. 1990) ...................................................................19, 20

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ...........................................................................6

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (Ct. App. 1986) .............................................................15

*Wilson v. ColourPop Cosms., LLC*,
   2023 WL 6787986 (N.D. Cal. Sept. 7, 2023)....................................................6

**Statutes**

Cal. Bus. & Prof. Code §17200 *et seq.*.......................................................................3

Cal. Bus. & Prof. Code §17500 *et seq.*.......................................................................3

Cal. Civil Code §1750 *et seq.* ....................................................................................3

Cal. Code of Civ. Proc. § 338(a) ...............................................................................11

Federal Food, Drug, and Cosmetic Act (FDCA),
   21 U.S.C. §§ 301–399 .............................................................................16, 17

**Other Authorities**

21 CFR § 101.9(c)(2)(ii)........................................................................................8, 10

21 CFR § 101.13(i)(3) ................................................................................................16

21 CFR § 101.13(h) ...................................................................................3, 6, 10, 16

Fed. R. Civ. P. 12(b)(1) ...............................................................................................4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO
FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

Federal Rule 12(b)(6) ..................................................................................................4

Rule 9(b) ....................................................................................................1, 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO
FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Sanyo Foods Corporation of America ("Sanyo") manufactures and sells Sapporo Ichiban packaged noodle products ("Products").  In compliance with Food and Drug Administration's ("FDA") regulations, the Products' nutrition label accurately reflects that the Products contain 0 grams of trans fat. The same, accurate "0g Trans Fat" representation is made on the front of the Products' labeling.

Despite the Products' compliant labeling, Plaintiff Sue Shin ("Plaintiff") brought a false advertising lawsuit in Los Angeles County Superior Court on August 17, 2022, as an individual action.  That action has been, and remains pending, in that court.  After extensive discovery and 16 months of litigation, Plaintiff moved to amend her complaint to convert it into a putative class action.  The superior court rightfully denied that motion. Immediately thereafter, Plaintiff filed the instant putative class action ("Complaint"), based on the identical products, labeling, and causes of action.

Here, as in the individual action, Plaintiff alleges  the "0g Trans Fat" labeling is misleading because, she surmises, there exist certain studies that opine refined oils present in food products contain trace amounts of trans fat.  However, these sources do not discuss, or even name, any ingredient present in the Products that would be relevant. Even more egregious, Plaintiff has not tested the Products, but rather asserts that she need not test them in order to allege that they must contain trans fat and therefore, the labeling must be misleading. Plaintiff's Complaint simply lacks the requisite foundation for injury or plausibility, and asks the Court to make too many inferential leaps.

Plaintiff's remaining causes of action are subject to dismissal on the same basis, in addition to other reasons, including but not limited to the expiration of the relevant statute of limitations, failure to meet the heightened pleading requirements of Federal Rule 9(b), lack of privity, and doctrine of preemption – defects that cannot be cured by any amendment.

Furthermore, given that the individual action in state court and this present action

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

are sufficiently parallel and duplicative, the Court should dismiss (or stay) the present matter pursuant to the United States Supreme Court's *Colorado River* doctrine. Doing so would conserve judicial resources and discourage Plaintiff's gamesmanship in the two matters.

For the reasons discussed herein, Plaintiff's Complaint should be dismissed in full, with prejudice.

## II.   PLAINTIFF'S ALLEGATIONS

Sanyo is a manufacturer and distributor of Sapporo Ichiban packaged noodle products. ECF 1-1, Compl. ("Compl."), ¶ 2. In compliance with federal law, the nutritional facts label on the back of the Products' package states that they contain 0 grams of trans fat. *Id.* ¶ 5. The Products also contain a statement on the front of the package of "0g Trans Fat." *Id.* ¶ 3.

Plaintiff alleges that "[s]ince August of 2018, she saw the label of Sapporo Ichiban Miso Ramen sold in grocery stores in Los Angeles, California, including Mitsuwa Marketplace." *Id.* ¶ 15. Multiple paragraphs later, Plaintiff states that "[d]uring the time period from August 2018 to December of 2019, Plaintiff purchased Sapporo Ichiban Miso Ramen" without providing any further detail on where she allegedly made this purchase and on how many occasions. *Id.* ¶ 38. Plaintiff alleges she "read and relied" on the "0g Trans Fat" labeling on "the Products" (again without alleging where, when, or on which product(s)) and that she would not have purchased "the Product" "absent the misrepresentation on the front label." *Id.* ¶¶ 46, 48.

Plaintiff asserts the "0g Trans Fat" statement is misleading because the Products, she believes, contain some unspecified trace amount of trans fat, because she believes "all refined edible oils contain some trans fat," and "[t]he top four vegetable oils consumed in the United States are soybean, canola, palm, and corn oil." *Id.* ¶¶ 7, 33, 34. Plaintiff also states that "small amount of trans fat are naturally present in milk and fat of cow and sheep." *Id.* ¶ 35. Rather than tying the above generalizations to any identified ingredient in the Products, she lists **all** the ingredients in the Products. *Id.* ¶ 32.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

Plaintiff alleges that "it was not until around December of 2019 when she first learned that the [Products] contain more than 0g but less than 0.5g of trans fat," with no further allegations supporting how she first learned of this. *Id*. ¶ 38. Plaintiff also alleges that she "does not need to test herself that Sapporo Ichiban Miso Ramen she purchased contained trans fat." *Id*. ¶ 34.

Based on these allegations, Plaintiff argues broadly that "[a]ny commercial product with the claim '0g Trans Fat' outside the Nutrition Facts Panel is considered misbranded." *Id*. ¶ 6.  Plaintiff also alleges that the Products violate 21 CFR § 101.13(h) and must include a disclosure statement stating, "See nutrient information for total fat, saturated fat, and sodium contents." *Id*. ¶ 63.

Plaintiff filed her Complaint on November 9, 2023, alleging: (1) violation of Cal. Bus. & Prof. Code §17200 *et seq*. ("UCL"), Unlawful Conduct; (2) violation of UCL, Unfair Conduct; (3) violation of Cal. Bus. & Prof. Code §17500 *et seq.*, False Advertising Law ("FAL"); (4) violation of Cal. Civil Code §1750 *et seq.*, Consumer Legal Remedies Act ("CLRA"); (5) unjust enrichment/breach of quasi contract; (6) fraudulent misrepresentation; (7) negligent misrepresentation; (8) breach of express warranty; (9) breach of implied warranty. *See generally id.* Plaintiff seeks public injunctive relief, restitution, punitive damages, and attorneys' fees and costs. *Id.*

## III.    RELEVANT PROCEDURAL HISTORY

### A.    Plaintiff's Individual Action Pending in Los Angeles Superior Court

Before filing this present Complaint, Plaintiff Sue Shin filed a lawsuit on August 17, 2022 in Los Angeles County Superior Court on an individual basis, regarding the same Products (the "State Action"). Request for Judicial Notice ("RJN"), Ex. A.  The State Action is based on the same set of facts and includes the same causes of action of UCL, FAL, and CLRA as the present Complaint, seeking the same public injunctive relief, restition, and attorney's fees and costs. *Compare* Compl. *with* RJN, Ex. B.

Plaintiff filed this present Complaint after the presiding judge in the State Action denied Plaintiff's Motion for Leave to Amend to file her proposed second amended

3

complaint where Plaintiff attempted to convert the State Action into the putative class action. *See* RJN, Ex. A, C, D. The presiding judge in the State Action denied Plaintiff's Motion for Leave to Amend, finding that "the proposed expansion of this litigation to a class action will result in prejudice to Defendant in the form of an expotential increase in the costs to defend this action." *See id.*, Ex. D. Following the ruling, Plaintiff filed the present Complaint (identical to her proposed second amended complaint) in Los Angeles County Superior Court as a separate action on November 9, 2023, effectively making this Plaintiff's third chance at pleading. *See id.*, Ex. A. Defendants timely removed the Complaint. *See* ECF 1.

## IV.   LEGAL STANDARD

A party may file a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To satisfy Article III standing, a plaintiff must allege an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed if the facts as pleaded do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

## V.   LEGAL ARGUMENT

### A.   Plaintiff Has Not Articulated An Injury for Article III Standing Purposes.

Plaintiff has not suffered an "injury in fact," one that is concrete and particularized, for Article III standing purposes. Plaintiff fails to satisfy this burden here for three main reasons.

**First**, the presence of any trans fat in the Products is purely hypothetical.  Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

concedes that she has not tested the Products for trans fat and insists she does not need to in order to know trans fat is present in the Products. Compl. ¶ 34.  She baldly asserts that "the ingredients" used in the Products contain trans fat, then proceeds to list *all* the ingredients without identifying which, if any, allegedly contain trans fat. *Id.,* ¶ 32.

In the subsequent paragraphs, Plaintiff lists the top vegetable oils consumed and cites to the Federal Register for the proposition that "all refined edible oils contain some trans fat." *Id.,* ¶¶ 33-34. Based on the ingredient list, however, it is not specified whether the Products contain refined oil, as opposed to unrefined, for this source to be relevant to her allegations.[1] Further, the section she cites to does not mention *any* ingredient in the Products by name and is instead a section primarily focused on Partially Hydrogenated Oils ("PHOs"), which is indisputably not an ingredient of the Products. *See id.,* ¶¶ 34.

Next, Plaintiff states that "milk and fat of cow and sheep[,]" "palm oil[,]" and "corn oil" allegedly can contain small amounts of trans fat.[2] *Id.,* ¶ 35. Of these, the reader must deduce independently, by process of elimination, that the only ingredient potentially relevant to Plaintiff's theory is palm oil. Plaintiff then cites two studies to support her claim, which, ironically, actually state that palm oil contains "very little amounts of trans fats (<1 percent)" — *and in fact, a review of these two studies belies Plaintiff's entire claim as neither even mention palm oil, let alone state that palm oil contains any trans fat. See id.;* RJN Exs. E-F. What's more, the study Plaintiff cites from the Journal of Oil Palm Research deals specifically with refined, bleached, and deodorized palm-based oils and fats obtained from refineries throughout Malaysia—

---

[1] Plaintiff alleges in the Complaint that the Products "contain[] refined palm oil and milk." Compl. ¶ 65, 67. 93. However, a review of the list of the ingredients show this is demonstrably false. *See id.,* ¶ 32. Milk is not listed on the ingredients list, nor can Plaintiff establish that refined, versus unrefined, oil is present in the Products based on the ingredients list.

[2] Plaintiff cites to numerous studies in the paragraph, but it is unclear which studies, if any, support her allegations.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

none of which Plaintiff alleges is used as an ingredient in the Products. *Id.* For all these reasons, Plaintiff has failed to allege any actionable injury.

**Second**, Plaintiff failed to adequately plead an injury because she does not plead one that is particularized to her. Plaintiff alleges that the Products contain trans fat (*see, e.g.*, *id.,* ¶¶ 7, 25, 32); however, she does not allege that she tested the Product she purchased, nor that any third party tested the Product.  Indeed, it cannot be disputed that Plaintiff does not know whether the Miso Ramen she actually purchased contained any trans fat. *See id.,* ¶¶ 34, 46-49. Plaintiff cannot rely on generalized allegations regarding the *hypothetical* presence of trans fat in packages of Products to assert a particularized injury. *See, e.g., Wilson v. ColourPop Cosms., LLC*, 2023 WL 6787986, at *5 (N.D. Cal. Sept. 7, 2023) (dismissing claims because plaintiff's allegations were based only on speculation); *Gaminde v. Lang Pharma Nutrition, Inc*., 2019 WL 1338724, at *2-3 (N.D.N.Y. Mar. 25, 2019) (same); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (to assert injury, "it 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect'") (emphasis in original); *Pels v. Keurig Dr. Pepper*, Inc., 2019 WL 5813422, at *4–5 (N.D. Cal. Nov. 7, 2019) (granting a motion to dismiss for lack of standing where plaintiff did not allege that the specific bottle of water he purchased contained "violative levels of arsenic"). Plaintiff's generalized allegations regarding trans fat in the Products are insufficient to confer standing for purposes of Article III.

**Third**, Plaintiff does not state a plausible injury from her allegation that the Products require the disclosure statement under 21 CFR § 101.13(h). Plaintiff alleges that she "would not have purchased Sapporo Ichiban Miso Ramen had Defendant included on the front of the package the 'See nutrition information for total fat, saturated fat, and sodium contents' disclosure.'" Compl. ¶ 63. However, the nutrition information here reflects the **same** representation on the labeling that the Products contain 0 grams trans fat.  *Id.,* ¶ 26.  Plaintiff thus fails to allege a plausible injury as such disclosure

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

would not have revealed to Plaintiff any different information that would have affected her purchasing decision[3].

For these reasons, Plaintiff's Complaint should be dismissed in its entirety for failure to sufficiently allege injury.

### B. Plaintiff Fails to Plausibly Plead the Elements of Her Claims.

#### i. Plaintiff Fails to Allege that the Labeling At Issue Is Likely To Deceive a Reasonable Consumer.

To state a claim under the UCL, CLRA, and FAL, Plaintiff must plausibly allege that Defendants' statements are likely to deceive a reasonable consumer. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate. *See id*.

Plaintiff's argument that "[*a*]*ny commercial product* with the claim '0g Trans Fat' outside the Nutrition Facts Panel is considered misbranded[]" implies that all food products must be free of microscopic traces of trans fat molecules — otherwise any "0g Trans Fat" claim must be misleading. Compl. ¶ 6. However, no reasonable consumer interprets "0g Trans Fat" in the way that Plaintiff suggests. Common sense supports that a reasonable consumer does not interpret "0g" as promising the complete absence, down to a microscopic level, of any molecule of the nutrient at issue. Indeed, for this very reason, the FDA explicitly permits the nutrition facts label to state 0 g trans fat if a product contains less than 0.5 gram trans fat. *Id.*, ¶¶ 5, 42; *see* 21 CFR § 101.9(c)(2)(ii). Reasonable consumers understand that commercially produced food may contain non-

---

[3] It should go without saying, but there was nothing stopping Plaintiff from turning over the package in the normal course; accordingly, failure to provide that instruction simply cannot give rise to an injury or a plausible claim.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

ingredient trace substances because manufacturers might use the same equipment to make different products, or that ingredients from other products made in the same facility may inadvertently intercross in small amounts. Indeed, the Products carry an optional allergen statement, alerting consumers that the Products may contain traces of "milk, eggs, fish, crustacean, tree nuts and peanut products." *See, e.g.,* Compl. ¶ 32. This statement alone should alert a reasonable consumer that it is not reasonable to expect that the nutrient content claims do not refer to purity at the microscopic level.

Even assuming *arguendo* that the Products contain traces of trans fat molecules (which Defendants deny), no reasonable consumer would consider these amounts a material concern. *See, e.g., Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 453 (S.D. Cal. 2014) (actionable misrepresentation or omission under CLRA must be "material"). The *potential* presence of microscopic amounts of trans fat that are not detectable via the FDA-approved method for quantifying fats in food—and whose presence is thus ***purely hypothetical***—is not enough to be deemed "material" under California consumer protection laws. *See, e.g.*, *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (no reasonable consumer would understand 'All Natural Ingredients' to mean the utter absence of residual pesticides); *Parks v. Ainsworth Pet Nutrition*, 2020 WL 832863, at *1–2 (S.D.N.Y. Feb. 20, 2020) (the "presence of negligible amounts of [a substance] in a dog food product that do[es] not have harmful . . . effects is not likely to affect consumers' decisions in purchasing the product and is thus not material.").

The reasonable understanding of "0g Trans Fat" is that there is no detectable amount of trans fat. No reasonable consumer would demand that nutrition labeling be based on analytical tests sensitive down to the molecular level, and Plaintiff does not allege that she has conducted such a test and received a positive result for trans fat, nor has she alleged that any such test even exists. Courts need not accept such a strained and unreasonable reading of "0g Trans Fat." *See, e.g.*, *Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1301 (2011) (rejecting as unreasonable a plaintiff's belief that an

8

1     image of a green droplet on a bottle of water indicated that the product had been
2     endorsed for environmental superiority by a third party organization).

3           For these reasons, Plaintiff's CLRA, FAL, and UCL claims should be dismissed.

4         **ii.**     ***Reid* and *Hawkins* Are Inapplicable.**

5           Plaintiff relies on *Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) and
6     *Hawkins v. Kroger Co.*, 512 F.Supp.3d 1079 (S.D. Cal. 2021) in her Complaint. *See*
7     ECF 1, Compl. ¶¶ 6, 27, 92-94. But the *Hawkins* cases cannot cure the Complaint's
8     defects. The *Hawkins* plaintiff claimed the use of Partially Hydrogenated Oils ("PHOs")
9     in Kroger's breadcrumbs and "0g Trans Fat" label violated UCL, FAL, and CLRA.
10   *Hawkins*, 906 F.3d at 767. However, the FDA had issued a Final Determination that
11   declared PHOs, *"which are the primary dietary source of industrially-produced trans*
12   *fatty acids (IP-TFA)*, [were] no longer generally recognized as safe (GRAS) for any use
13   in human food." *Hawkins,* 906 F.3d at 767 n. 3 (emphasis added). Based on the FDA's
14   determination, the court found that (1) "the nutrition label itself, which lists PHOs as an
15   ingredient, [was] actual evidence the '0g Trans Fat' label was false or misleading'; and
16   (2) "Kroger [did] not dispute the breadcrumbs contain some trans fat" as PHOs had
17   been intentionally added. *Hawkins,* 512 F. Supp. 3d at 1090. In contrast, Plaintiff here
18   does not plead that the Products contain any PHOs (they do not); Defendants do not
19   concede the Products contain any detectable trans fat; Plaintiff has not identified any
20   comparable ingredient, and even if one assumes Plaintiff means to indicate the palm oil
21   is problematic, the FDA has made no such finding regarding palm oil.

22           Plaintiff's claims are also distinguishable from *Reid v. Johnson & Johnson*, 780
23   F. 3d 952 (9th Cir. 2015). *See* ECF 1, Compl. ¶¶ 6, 27-31, 37. The *Reid* case concerned
24   a "**No** Trans Fat" labeling for a vegetable oil-based spread that included PHOs. *Id*. at
25   957. The *Reid* court explained that a reasonable consumer could be misled based on
26   multiple FDA guidance letters that specifically stated that the claims of "No Trans Fat"
27   were "an unauthorized nutrient content claim ... which has not been defined by FDA."
28   *Id*. at 956, 962. More specifically, the *Reid* court determined that, in the context of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO
FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

FDA's regulations, the word "No" has no meaning beyond its ordinary, dictionary definition, *i.e.*, "not any," and "No" cannot be used to list trans fat content in the nutrition box. *Id.*

Here, in contrast, "**0g** Trans Fat" is explicitly defined by the FDA. The FDA requires a "statement of the number of grams of trans fat in a serving," unless the product "contain[s] less than 0.5 gram of total fat in a serving." 21 C.F.R. § 101.9(c)(2)(ii). The regulations further provide that "[i]f the serving contains less than 0.5 gram [of trans fat], the content, when declared, shall be expressed as zero." *Id.* Thus, in contrast to a "No Trans Fat" labeling, "0g Trans Fat" is explicitly defined as any quantity less than 0.5 gram and is a rounded value which use in the nutrition box is mandated by the FDA. The Products' labeling simply mirrors this accurate information on its nutrition box and is not misleading.

### iii. Plaintiff's UCL Claims Fail for Additional Reasons.

Plaintiff alleges that the "0g Trans Fat" labeling is misleading and deems the Products misbranded, and that the Products violate 21 CFR §101.13(h) without a disclosure statement, constituting UCL violations under the "unlawful" prong. Comp. ¶¶ 92-24. However, Plaintiff's argument fails as the claim must allege a predicate legal violation. *See Hawkins v. Kellogg Company*, 224 F. Supp. 3d 1002, 1013 (S.D. Cal. 2016) (unlawful claims failed to extent they are premised on federal law). Here, the Products are not misbranded as it accurately reflects 0 grams of trans fat, nor would reasonable consumers be misled by the labeling. *See* Section V.B(i), *supra.* In addition, any claims of 21 CFR §101.13(h) violations are preempted and cannot serve as the basis for UCL claims. *See* Section V.C, *infra*.

Plaintiff's "unfair" prong argument likewise fails. Plaintiff does nothing more than recite the elements of the "unfair" prong without alleging how consumers do not derive any benefit from the Products. *See* Compl. ¶ 97. Specifically, Plaintiff never alleges that the Products do not function as intended nor that she has suffered any specific ill-effects from the Products. *See Elias v. Hewlett-Packard Co.,* 903 F. Supp.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

2d 843, 858 (N.D. Cal. 2012) (dismissing the unfair prong of the UCL claim because plaintiff only "makes conclusory statements that HP's alleged conduct is unfair.").

On this additional basis, Plaintiff's UCL claims require dismissal.

### iv.    Plaintiff's FAL and CLRA Claims Are Time-Barred.

Plaintiff's FAL and CLRA claims are subject to dismissal based on their three year statute of limitations period. Cal. Code of Civ. Proc. § 338(a); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014). Plaintiff filed her Complaint on November 9, 2023, more than three years after her alleged purchase of the Product during the "time period of August of 2018 to December of 2019." Compl. ¶ 38. Plaintiff also alleges that "around December of 2019," Plaintiff first learned of the "Products contain more than 0g but less than 0.5g of trans fat," again past the three year statute of limitations. *Id*. Nor has Plaintiff pled any facts to support the application of the continuing violation doctrine or delayed discovery rule. *See Marshall v. PH Beauty Labs, Inc.,* 2015 WL 3407906, at *2 (C.D. Cal. May 27, 2015) (holding that plaintiff's FAL claims are time-barred based on plaintiff's vague allegations that did not support applying the continuing violation doctrine); *see also Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 882 (N.D. Cal. 2019) (finding, where plaintiff "allege[d] no facts regarding the manner" of discovery, "his statements that he could not have made his discovery sooner are nothing more than conclusory"). On this basis alone, Plaintiff's FAL and CLRA claims must be dismissed.

Plaintiff also failed to comply with the 30-day written notice requirement mandated by the CLRA, and the Court should dismiss all damages claims arising from her CLRA claim.  *See Munning v. Gap, Inc*., 2016 WL 6393550, at *4 (N.D. Cal. Oct. 28, 2016) (dismissing claim for failure to fully comply with CLRA notice provisions). A "claim for damages under the CLRA requires *strict* compliance with the notice requirements set forth in [California Civil Code] § 1782." *Laster v. T-Mobile USA, Inc*., 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (emphasis in original) (dismissing CLRA claim for damages with prejudice). Plaintiff has not, and cannot, allege that she has met

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

these notice requirements. *See generally* Compl.

### v.  Plaintiff's Unjust Enrichment Claim Fails for Several Reasons.

Plaintiff's claim for "unjust enrichment/breach of quasi contract" should be dismissed because it, too, rests on the same implausible and non-actionable theory as the rest of the Complaint. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) ("when a plaintiff fails to sufficiently plead an actionable misrepresentation or omission, [her] restitution claim must be dismissed."). As discussed in Section V.B(i), *supra,* Plaintiff fails to adequately allege that the labels are likely to deceive a reasonable consumer. Consequently, she has not plausibly alleged an actionable misrepresentation, and her unjust enrichment/quasi-contract claim fails.

Moreover, "in California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Smith Micro Software, Inc. v. Reliance Commc'ns, LLC*, 2020 WL 225074, at *4 (C.D. Cal. Jan. 14, 2020) ("California law does not permit a standalone cause of action for unjust enrichment," instead, unjust enrichment is a remedy).

Plaintiff also cannot state a claim for unjust enrichment/quasi-contract because she asserts a separate claim for breach of an express warranty and, "under California law 'there cannot be a claim based on quasi contract where there exists between the parties a valid express contract covering the same subject matter.'" *Smith v. Allmax Nutrition, Inc.*, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015) (dismissing unjust enrichment/quasi-contract claim premised upon alleged label misrepresentation). Plaintiff also does not allege, let alone plausibly, that she lacks an adequate remedy at law, which is a prerequisite to equitable relief. *Milman v. FCA U.S., LLC*, 2018 WL 5867481, at *15-16 (C.D. Cal. Aug. 30, 2018).

Plaintiff's claim for unjust enrichment must be dismissed without leave to amend.

507357520.6

### vi.    Plaintiff's Allegations Do Not Support Her Claims for Fraudulent and Negligent Misrepresentation.

Plaintiff's fraudulent misrepresentation claim must satisfy the heightened pleading requirements of Federal Rule 9(b)[4], which requires Plaintiff to "state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125-27 (9th Cir. 2009). "To satisfy Rule 9(b), a pleading must identify the who, when, what, where, and how of the misconduct charged, as well as what is false or misleading about the [purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

Here, Plaintiff fails to comply with Rule 9(b)'s heightened standard because she fails to provide the basic details of her alleged purchase, or any facts supporting an actual misrepresentation. Broken down, Plaintiff fails to allege when exactly she purchased the challenged products or how and why she relied on the allegedly deceptive "0g Trans Fat" statement as part of her purchasing decision. Plaintiff alleges only that "[s]ince August of 2018, she saw the label of Sapporo Ichiban Miso Ramen sold in grocery stores in Los Angeles, California, including Mitsuwa Marketplace." Compl. ¶ 15. Plaintiff then vaguely alleges, multiple paragraphs later, that "[d]uring the time period from August of 2018 to December of 2019, Plaintiff purchased Sapporo Ichiban Miso Ramen." *Id.,* ¶ 38. Plaintiff fails to allege where she bought the Product, and she fails to connect how "[seeing] the label" since August of 2018 in grocery stores relates to her alleged purchase over the vast time period of 16 months. Indeed, it is unclear even whether Plaintiff bought the Product once or multiple times based on the vague and inconsistent allegations. *Compare with id.* ¶ 2 ("From August 2018 to December 2019, Plaintiff bought the noodle products from convenient stores and grocery markets

---

[4] Additionally, as Plaintiff's UCL, FAL, and CLRA claims are grounded in fraud, they are subject to the same heightened pleading requirements of Rule 9(b) and fail for the reasons discussed herein. *See  Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

in Los Angeles, California.").

Plaintiff also alleges that "around December of 2019," she purportedly "first learned" that the Products "contain more than 0g but less than 0.5g of trans fat." *Id.*, ¶ 38. Strikingly absent from the Complaint is how she came to "learn" of this.[5] In addition to admitting that she has not tested the Products, Plaintiff fails to allege any detail whatsoever when she read or came upon the sources cited to in her Complaint. *See id.*, ¶¶ 33-35. Plaintiff has failed to plead facts to support any finding of an actionable misrepresentation.

Finally, Plaintiff's negligent misrepresentation claim fails because the economic loss doctrine acts as a bar to claims for negligence — including negligent misrepresentation — where a plaintiff's damages are purely economic. *See, e.g., Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 Fed. Appx. 603, 605 (9th Cir. 2008) ("In the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed."); *Michael v. Honest Co. Inc.*, 2016 WL 8902574, at *23-24 (C.D. Cal. Dec. 6, 2016) (dismissing plaintiffs' negligent misrepresentation claim stemming from a misleading product label based on purely economic losses).

Plaintiff's claims for fraudulent and negligent misrepresentation must be dismissed.

### vii.    Plaintiff's Breach of Express and Implied Warranties Fail.

To state a claim for breach of express warranty under California law, a plaintiff must allege a breach of warranty which proximately caused the plaintiff's injury.

---

[5] Plaintiff also alleges vaguely that "[i]n November 2022, Plaintiff learned for the first time that Defendant SANYO knew and should have known by the laboratory tests that the SAPPORO ICHIBAN Products of SANYO contain Trans Fat above 0g per serving." *Id.*, ¶ 23. It is unclear what tests Plaintiff is referencing, nor is this alleged discovery years after her purchase in 2019 (and more than 13 months after her State Action was initiated) relevant.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986); *Mauro v. Gen. Motors Corp.*, 2008 WL 2775004, at *8 (E.D. Cal. July 15, 2008).

Here, Plaintiff argues because the Products allegedly do not contain "0g Trans Fat," this express warranty was breached. As discussed in Section V.A, *supra,* Plaintiff provides no facts or evidence, other than her unsupported belief and unreasonable interpretation, that the Products were not in conformance with the alleged warranty. Rather, the Products fully comply with federal labeling requirements and otherwise accurately describe the amount of trans fat in the Products. Plaintiff failed to plead facts sufficient to support a breach of warranty, requiring dismissal. *See McKinnis v. Kellogg USA*, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (dismissing breach of warranty claim because a "cursory glance at the nutrition information printed on the box" confirms that labeling is "entirely accurate").

Plaintiff's claim for breach of implied warranty also fails. To sustain this claim, a product must be defective or not fit for the ordinary purpose for which the product is used. *Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975). The implied warranty "does not impose a general requirement that goods precisely fulfill the expectation of the buyer." *Stearns*, 2009 WL 1635931, at *8. "[T]here must be a fundamental defect that renders the product unfit for its ordinary purpose." *Id.* Here, Plaintiff does not (and cannot) plausibly allege that the Products were unfit for its ordinary purpose of human consumption because FDA expressly permitted its sale as such. *See Backus v. Gen. Mills, Inc.,* 122 F. Supp. 3d 909, 932-33 (N.D. Cal. 2015).

Moreover, California requires that a plaintiff alleging a breach of implied warranty claim be in vertical privity with the defendant. *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1023 (9th Cir. 2008) (a consumer who buys from a retailer is not in privity with the defendant manufacturer). Plaintiff does not allege, nor could she, that she is in vertical privity with Defendants. Accordingly, this claim fails against Defendants for this independent reason.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

**C.**    **The Products Do Not Require a Disclosure, and To the Extent Plaintiff Is Attempting To Expand Labeling Requirements, Her Claims Are Pre-Empted.**

Plaintiff argues that the Products violate  21 CFR § 101.13(h) by not including a disclosure statement. *See* Compl. ¶ 93. However, a reading of the statute reveals that the law permits truthful and not misleading quantitative claims (such as "0g trans fat") and exempts such claims from requiring a disclosure. *See* 21 CFR § 101.13(i)(3) ("the label or labeling of a product may contain a statement about the **amount** or percentage of a nutrient if… [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), **in which case no disclaimer is required**.") (emphases added).

Moreover, the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–399, details the federal provisions prohibiting "misbranding" of food and grants the FDA exclusive authority to ensure that "foods are . . . properly labeled" on behalf of all consumers. *Id*. §§ 331(b), 393(b)(2)(A). Although "citizens may petition the FDA to take administrative action," ultimately it is the FDA that is "responsible for investigating potential violations of the FDCA." *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013). Accordingly, to the extent that Plaintiff is "implicitly attempting to expand the labeling regulations to cover statements like the ones here, this would impose non-identical requirements, and therefore the claim would be preempted." *Effinger v. Ancient Organics LLC,* 657 F. Supp. 3d 1290, 1299 (N.D. Cal. 2023) ("even if the Product did include nutrient content claims, thus requiring the label to include "mandatory disclosure statements," *see* 21 C.F.R. § 101.13(h), Plaintiffs would be preempted from bringing suit on that basis.").  As the FDCA impliedly preempts state law claim that "originates from, is governed by, and terminates according to federal law," Plaintiff's claim must be dismissed. *Chong v. Kind LLC*, 585 F. Supp. 3d 1215, 1220 (N.D. Cal. 2022).

507357520.6

**D.    Plaintiff Has Wrongfully Named Takeo Sato as a Defendant in the Complaint, Requiring His Dismissal.**

Plaintiff has failed to plead any allegations identifying specific acts of Defendant Takeo Sato that support an independent basis for liability against him, requiring his dismissal from the matter. *See O'Connor v. Uber Techs., Inc.,* 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (dismissing UCL claim against corporate officers where plaintiffs failed to allege that directors "'actively and directly participate[d] in [any] unfair business practice[s],'" because "California law does not impose liability on corporate officers merely for their role in the corporation, but only for wrongful acts in which they have been personally involved").

Plaintiff's only stated basis for Mr. Sato's inclusion in the complaint as a named defendant is to say  that "Defendant Sato is the General Manager of Sanyo" and conclude that he "is held personally liable for Defendant SANYO's violation of strict liability provision" of the FDCA.  Compl. ¶ 16.  Plaintiff's Complaint is devoid of any alleged facts regarding acts Defendant Takeo Sato either personally committed, or that were committed by way of his personal direction.  In fact, there are no facts alleged to show how Defendant Takeo Sato was otherwise sufficiently responsible for the alleged conduct at issue. He must be dismissed from this action, with prejudice.

**E.    This Action Should Be Dismissed or Stayed Under the *Colorado River* Doctrine to Further the Interests of Wise Judicial Administration.**

**i.    The *Colorado River* Doctrine Applies.**

"Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interests of 'wise judicial administration.'" *Krieger v. Atheros Commc'ns, Inc.*, 776 F. Supp. 2d 1053, 1057 (N.D. Cal. 2011) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).

"As a threshold matter to the *Colorado River* test, the Court must determine whether the federal and state actions are sufficiently 'parallel' -- *i.e.* whether

17

507357520.6

substantially the same parties are contemporaneously litigating the same issues in different forums." *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008).

Here, it is beyond doubt that resolving the State Action will substantially resolve this litigation because both actions cover the same alleged conduct by Defendant over the same Products at issue. *Compare* ECF 1, Compl. *with* RJN, Ex. B. More specifically, Plaintiff alleges the exact same violations of UCL, FAL, and CLRA (first through fourth causes of action) and seeks the same remedies. *See Melt Franchising, LLC v. PMI Enterprises*, *Inc.*, 2008 WL 4811097, at *2 (C.D. Cal. Oct. 27, 2008) (even where claims are not completely overlapping, actions may be deemed "substantially similar" such that "the state court litigation provides an adequate vehicle for resolution of . . . claims").

### ii.    The *Colorado River* Factors Support Dismissal or A Stay.

Once determined that the matters are sufficiently parallel, there are eight factors in deciding whether to dismiss or stay an action, including: (1) whether the state court first assumed jurisdiction over any property at stake; (2) inconvenience of the federal forum; (3) desire to avoid piecemeal litigation; (4) order in which the forums obtained jurisdiction; (5) whether federal or state law provides the rule of decision on the merits; (6) whether the state court proceedings adequately protect the parties' rights; (7) desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co., Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). Here, the relevant *Colorado River* factors weigh in favor of dismissing or staying this action in deference to the State Action.

First, the threat of piecemeal litigation favors dismissal or a stay when "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). Here, the duplication of efforts by this Court and the state court, coupled with the risk of differing results to the relief Plaintiff seeks (*e.g.*, public injunctive relief), weighs strongly in favor of granting a dismissal or stay. *See, e.g.*, *Canopus Biopharma,*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

*Inc. v. Supportive Therapeutics, LLC*, 2016 WL 7438795, at *3 (C.D. Cal. Mar. 25, 2016) (the desirability of avoiding piecemeal litigation factor "weighs heavily in favor of granting the stay because resolution of both the [state court] action and this case depend on a determination of the same questions"); *Sea Prestigo, LLC v. M/Y Triton*, 787 F. Supp. 2d 1116, 1119 (S.D. Cal. 2011) ("staying the case would eliminate the possibility of the state and federal courts both deciding, and possibly reaching inconsistent conclusions").

Second, the State Action preceded this action by, and has been pending for, over 16 months. *See* RJN, Ex. A. "It is settled that the court first assuming jurisdiction over a matter 'may exercise that jurisdiction to the exclusion of other courts.'" *El Centro Foods, Inc. v. Nazarian*, 2010 WL 1710286, at *3 (C.D. Cal. Apr. 21, 2010). In addition, where the first-filed action has made substantial progress, as is the case here with the State Action, this factor also weighs heavily in favor of granting dismissal or a stay. *See, e.g., Am. Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) (state action had made substantive progress, including deciding several motions, and the parties had conducted some discovery, in contrast to the federal action, which had not yet progressed); *Krieger*, 776 F. Supp. 2d at 1062 (factors weighing in favor of staying federal action included that state action was filed first and had progressed by entering protective order and completion of an initial round of discovery). Indeed, the court in the State Action has already resolved challenges to the pleadings via Defendant's demurrer and discovery is ongoing. RJN, Ex. A. Allowing Plaintiff's claims to go forward here will result in duplicative discovery in relation to the same facts and issues, wasting the parties' and judicial resources.

Third, the merits of the overlapping claims in both this action and the State Action will be determined by the application of California law, not federal law, and this factor supports dismissal or stay. *See Canopus Biopharma, Inc.*, 2016 WL 7438795 at *4 ("Where state law issues predominate, 'granting the stay is consistent with the federal court's discretion to decline to exercise jurisdiction out of consideration for federal-state

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

comity.'"").

Fourth, there is no doubt that the state court proceedings are sufficient to protect Plaintiff's rights, since she is the named plaintiff and California law applies. *See Am. Int'l Underwriters*, 843 F.2d at 1258 (parallel state court proceedings adequate and weigh in favor of stay).

Fifth, Defendants maintain there is a likelihood that the State Action proceedings will resolve a substantial amount of issues before this Court, including but not limited to the public injunctive relief that Plaintiff seeks. And for the reasons discussed herein, the remaining causes of action not included in the State Action (fifth through ninth causes of action) must be dismissed based on numerous independent reasons. *See* Sections V.B, *supra*.

The remaining factors - whether the state court first assumed jurisdiction over property, the inconvenience of the federal forum, and whether exercising jurisdiction would promote forum shopping - are irrelevant to the current situation and do not alter the analysis. *See, e.g.*, *Travelers Indem. Co.*, 914 F.2d at 1371 (absent evidence of forum shopping behavior, this factor is not relevant).

Plaintiff's gamesmanship in filing the present action after being denied leave to amend her complaint in the State Action should not be overlooked by this Court. With all of the relevant factors weighing in favor of abstention, dismissing or staying this case will conserve the resources of the parties, reduce the risk of piecemeal litigation, and ensure "wise judicial administration" in accord with the *Colorado River* doctrine.

## VI. CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court dismiss this action or, in the alternative, dismiss or stay this action under the *Colorado River* doctrine in relation to the State Action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

Dated: January 22, 2024                    **K&L GATES LLP**

By: */s/ Ashley Song*
    Caitlin Blanche
    Ashley Song
    Attorneys for Defendants
    Sanyo Foods Corporation of America;
    Takeo Sato

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6

# **L.R. 11-6.2 ATTESTATION**

The undersigned, counsel of record for Defendants Sanyo Foods Corporation of America and Takeo Sato, certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1.


Dated:  January 22, 2024                    */s/ Ashley Song*
                                                          Ashley Song

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANYO FOODS CORPORATION OF AMERICA AND TAKEO SATO'S MOTION TO DISMISS

507357520.6