1  Matthew G. Ball (SBN 208881)
2  matthew.ball@klgates.com
   K&L GATES LLP
3  4 Embarcadero Center, Suite 1200
4  San Francisco, California 94111
   Telephone: (415) 882-8200
5  Facsimile: (415) 882-8220

6
   Tyler G.D. Anders (SBN 327478)
7  tyler.anders@klgates.com
8  K&L GATES LLP
   1 Park Plaza, 12th Floor
9  Irvine, California 92614
   Telephone: (949) 253-0900
10 Facsimile: (949) 253-0902

11
12 Attorneys for Defendants
   SANYO FOODS CORP. OF AMERICA, et al.
13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

17 | SUE SHIN, on behalf of herself, all | Case No. 2:23-cv-10485
   | others similarly situated, and the general |
18 | public |
   | | **DEFENDANT SANYO FOODS**
19 | | **CORP. OF AMERICA'S**
   |         Plaintiffs, | **OPPOSITION TO PLAINTIFF'S**
20 | | **MOTION FOR CLASS**
   | | **CERTIFICATION**
21 | v. |
22 | | Date: December 2, 2024
   | SANYO FOODS CORP. OF | Time: 1:30 p.m.
23 | AMERICA, et al., | Dept. : 10A
24 | |
   |         Defendants. |
25

26

27

28

───────────────────────────────────────────

              SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
                              CERTIFICATION

# Table of Contents

**Page**

INTRODUCTION ................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 1

FACTS AND PROCEDURAL HISTORY .......................................................... 3

    I.     Facts ........................................................................................................... 3

    II.    Procedural History ................................................................................... 4

LEGAL STANDARDS .......................................................................................... 6

ARGUMENT ........................................................................................................... 7

    I.     Class Certification Should Be Denied Because Ms. Shin Has Failed To Provide A Valid Damages Model, And Thus Cannot Establish 23(b)(3) Predominance ................................................................................. 7

            A.     The "Full Refund" Model Is Inappropriate, Given That This Case Presents A Technical Violation Of FDA Regulations At Most, And Ms. Shin Regularly Enjoyed Sanyo Foods' Products For More Than A Decade. ............................................................. 8

            B.     Ms. Shin Cannot Meet Her Burden Under FRCP 23(b)(3) To Set Forth A Premium Price Model With Attorney Argument Alone. ............................................................................................ 9

    II.    Class Certification Should Be Denied Because Ms. Shin Has Not Introduced Sufficient Evidence That The "0g Trans Fat" Claim Was Material. ............................................................................................... 12

    III.   Class Certification Should Be Denied Because Putative Class Counsel Is Not Adequate Under FRCP 23(a)(4) And 23(g). ................. 17

            A.     The Work Ms. Shin's Counsel Has Done To Identify And Investigate The Claims In This Action Is Woefully Inadequate. . 18

B.    Ms. Shin's Counsel Lacks Experience And The Necessary
Resources To Handle Complex Consumer Class Action
Lawsuits. ..........................................................................20

C.    Counsel Lacks Knowledge Of The Applicable Law As
Demonstrated By His Misreading Of *Lytle v. Nutramax
Laboratories, Inc.* ...........................................................21

IV.    This Court Should Decline To Certify A Nationwide Class Because
Common Issues Of Law Do Not Predominate. .....................................21

**CONCLUSION** ........................................................................**25**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg & Sales Pracs. Litig.*,
No. ML 13-2438, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ...........13, 14, 15

*Allen v. Hyland's Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014)............................................................8

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)................................................................................6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................12

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016)...........................................................8

*Brickman v. Fitbit, Inc.*,
No. 3:15-cv-2077, 2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) ...................13

*Caldera v. J.M. Smucker Co.*,
No. CV 12-4936-GHK VBKX, 2014 WL 1477400 (C.D. Cal. Apr. 15,
2014) ..........................................................................................................8

*Chacanaca v. Quaker Oats*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010).......................................16, 17

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...............................................................2, 5, 7, 10

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014)..................................................11, 15

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015)............................................10, 13

*Darisse v. Nest Labs, Inc.*,
No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. May 28,
2021)
..............................................................................21, 22, 23, 24

*Diamondstar Ent. Holdings, LLC v. THH, LLC*,
641 F. Supp. 3d 849 (C.D. Cal. 2022)..................................................9

*Ehret v. Uber Techs., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015)................................................15

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................6, 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)..................................................................................12

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)................................................................................7

*Gross v. Vilore Foods Co.*,
   No. 20cv894, 2022 WL 1063085 (S.D. Cal. Apr. 8, 2022)..............................16

*Guido v. L'Oreal, USA, Inc.*,
   No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24,
   2014) ........................................................................................................10

*Jones v. ConAgra Foods, Inc.*,
   No. C 12-1633, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ......................16

*Kandel v. Brother Int'l Corp.*,
   264 F.R.D. 630 (C.D. Cal. 2010)........................................................18, 19, 21

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) .................................................................8, 9

*Krueger v. Wyeth, Inc.*,
   396 F. Supp. 3d 931 (S.D. Cal. 2019) ............................................................8

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) .........................................................................9

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ..............................................................10, 13

*Lytle v. Nutramax Laboratories, Inc.*,
   114 F.4th 1101 (9th Cir. 2024)................................................................*passim*

*Lytle v. Nutramax Laboratories, Inc.*,
   99 F.4th 557 (9th Cir. 2024) ........................................................................2

*Makaeff v. Trump Univ., LLC*,
   309 F.R.D. 631 (S.D. Cal. 2015) ...................................................................8

*Miller v. Fuhu Inc.*,
   No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1,
   2015) ...................................................................................................10, 11

*Motty v. First Student, Inc.*
   No. 2:15-CV-7463-ODW (E), 2016 WL 4498452 (C.D. Cal. August
   26, 2016) .............................................................................................18, 19, 20

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-1271, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ......................13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) (en banc)......................................................6, 7, 12

iv

*In re POM Wonderful LLC*,
  No. ML 10-02199 DDP RZX, 2014 WL 1225184 (C.D. Cal. Mar. 25,
  2014) ...................................................................................................8, 9, 10

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ..................................................... 8

*Saulic v. Symantec Corp.*,
  596 F. Supp. 2d 1323 ..................................................................20

*Sevidal v. Target Corp.*,
  189 Cal. App. 4th 905 (2010) ........................................................15

*Shahinian v. Kimberly-Clark Corp.*,
  No. CV 14-8390, 2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) ...................13

*Shin v. Lee*,
  No. SACV 16-01225-CGL, 2018 WL 3816739 (C.D. Cal. Mar. 16,
  2018) .............................................................................4, 20, 22

*Sidibe v. Sutter Health*,
  333 F.R.D. 463 (N.D. Cal. 2019) ..................................................... 9

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ...................................................13, 14

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...............................................16

*Varela v. Indus. Prof'l & Tech. Workers*,
  No. CV 08-1012 SVW (RZX), 2009 WL 10670788 (C.D. Cal. Oct.
  28, 2009) ..................................................................................17

*Villalpando v. Exel Direct Inc.*,
  303 F.R.D. 588 (N.D. Cal. 2014) .....................................................12

*Wal-Mart v. Dukes*,
  564 U.S. 338 (2011)....................................................................7

**Statutes**

Class Action Fairness Act ............................................................... 5

False Advertising Law and Consumer Legal Remedies Act ....................................3

Unfair Competition Law ....................................................................3

**Court Rules**

Federal Rule of Civil Procedure 23 ............................................*passim*

Federal Rules of Civil Procedure Rule 12(b)(6)............................................5

**Other Authorities**

21 C.F.R. § 101.9(c)(2)(ii) ......................................................4, 16

v

## **INTRODUCTION**

This is a putative consumer class action where Plaintiff Sue Shin seeks to recover against Defendant Sanyo Foods Corp. of America ("Sanyo Foods") because Sanyo Foods told consumers on its <u>front-of-package</u> label essentially the same thing as the federal Food and Drug Administration <u>requires</u> Sanyo Foods to tell consumers in the Nutrition Facts Panel ("NFP") found on of the <u>back</u> of its packaging.   *See*, *e.g.*, Declaration of Juan Hong in Support of Motion for Class Certification ¶ 2 & Exh. 1, ECF No. 32-2, at p. 9 and 10 of 90.

Specifically, until deciding to remove it, Sanyo Foods included a claim that its popular ramen noodle products contained "0g Trans Fat" on the front label of the products' packaging.   At all relevant times, this "0g Trans Fat" claim was substantially identical to what the FDA <u>compels</u> Sanyo Foods to say about Trans Fats in the NFP found on the back of its packaging:   if the product contains between 0 and 0.5g of Trans Fats per serving, FDA regulations unequivocally provide that Sanyo Foods <u>must</u> tell the consumer in the NFP that its ramen noodle products contain <u>0g Trans Fats</u> per serving.   For the sin of saying essentially the same thing on the front of its packaging as the FDA legally requires it to say on the back, Ms. Shin has been prosecuting an individual action in California state court since 2022, as well as this putative class action in this Court since December of 2023.

This Motion presents the opportunity for this Court take a significant step towards ending this litigation.   The question presented by this Motion is not a close call by any stretch of the imagination.   Ms. Shin utterly fails in every respect to meet her evidentiary burden to establish  the prerequisites of Federal Rule of Civil Procedure 23.  This Court should deny Plaintiff's Motion.

## **SUMMARY OF ARGUMENT**

Rarely does a Motion for Class Certification betray such a fundamental

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

misunderstanding of class action law.   For example, to dispose of this Motion, this Court need proceed no further than to decide the question of whether Ms. Shin has presented a valid damages model to satisfy her burden under FRCP 23(b)(3), and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).   Ms. Shin claims that she can satisfy that burden by having her attorney simply state in the Moving Papers – with no supporting evidence whatsoever – that the class is either entitled to a "full refund", or that at some point Ms. Shin will produce an expert who will design a "choice based conjoint analysis" premium price damages model.   M'tn at 24:1-10.

Ms. Shin cannot proceed with a "full refund" model.   In cases involving a nutritious food product that consumers such as Ms. Shin enjoy consuming, a full refund model is inappropriate.   Ms. Shin testified in deposition in the related state case that she has been happily consuming the Miso ramen flavor with regularity and gusto since approximately 2003.   Ms. Shin further cannot establish a valid premium price model with nothing more then attorney argument, and the case she relies on for that proposition, *Lytle v. Nutramax Laboratories, Inc.*, 99 F.4th 557 (9th Cir. 2024), has not only been amended and superseded, it stands for the <u>exact opposite proposition</u>.

Ms. Shin has also failed to meet her burden on FRCP 23(b)(3), because she has introduced no evidence whatsoever that the alleged false claim "0g Trans Fat" on the front of the packaging is even material to the class.   In a case grounded on a "misrepresentation" that is substantially identical to what Sanyo Foods is legally required to tell the consumer, materiality is critical.  Ms. Shin concedes this by trying to meet her burden with stray language from Sanyo Foods' website.   Her efforts fail for a variety of reasons.

Defendant submits that this is a case where inadequacy of counsel under FRCP 23(a)(4) and 23(g) is clear.   Ms. Shin's counsel's declaration, as well as a Westlaw search, reveals that he has no track record of successfully handling a

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

complex consumer class action similar to this one.  His substantial errors in judgment and delays led to the dismissal of the Unfair Competition Law claim on a motion to dismiss, and to the dismissal of the claims for violation of the False Advertising Law and Consumer Legal Remedies Act on <u>two separate grounds</u>. Moreover, despite this matter having been filed on November 9, 2023, Plaintiff's counsel has done nothing more in this case besides serve two sets of written discovery and oppose Defendant's Motion to Dismiss.   Further, Ms. Shin's counsel is wrong on the law applicable to damage models, and did no work at all to develop one.

Finally, Ms. Shin has failed to carry her burden that common issues of law predominate.   In fact, the laws of the 50 states pertaining to Ms. Shin's remaining claims for breach of express warranty, breach of implied warranty, intentional misrepresentation, and negligent misrepresentation will apply to defeat predominance.

## **FACTS AND PROCEDURAL HISTORY**

### **I.    Facts**

Sanyo Foods manufactures and sells Sapporo Ichiban packaged noodle products.  M'tn at 1:3-4.   Although Ms. Shin claims in her declaration to have begun consuming Sanyo Foods' Miso Ramen flavor in August of 2018 (ECF No. 32-3, at ¶ 2), she testified in her state court deposition that she began consuming Sanyo Foods' Miso ramen flavored product as early as 2003, or even earlier. Declaration of Matthew G. Ball ¶ 2 & Exh. A (Shin Depo. 53:18-54:5; 60:2-61:2). She first started buying Sanyo Foods' ramen noodle products in the Miso flavor because she wanted to try a Japanese ramen product.   *Id.* (Shin Depo. 60:2-13). She continued buying Sanyo Foods' Miso ramen because she thought it tasted good. *Id.* (Shin Depo. 60:22-61:2).  In fact, in deposition, she could not think of a ramen noodle product she liked better than Sanyo Foods' products.   *Id.*  (Shin Depo.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

71:23-72:2).

This is at least Plaintiff's fifth labeling lawsuit since February 2017 where she has been represented by her current counsel. Ball Decl. ¶¶s 2-5 & Exhs. A, B, C & D (Shin Depo. at 27:8-32:17 & Exhs. 14, 15, & 16 (Complaints)). Indeed, what seems to have happened is that she apparently first had an issue with Campbell Soup's labeling, hired her current counsel because he was the attorney for the company where she worked, and then settled the claim. *Id.* & (Shin Depo. 21:20-22:21) Undoubtedly, Ms. Shin and her counsel received some amount of money in a settlement from the Campbell Soup lawsuit, though she would not admit this, and her counsel obstructed Sanyo Foods' inquiry into Ms. Shin's litigious history and the money she had made from it. *Id.* (Shin Depo. 21:20-22:21). After that settlement, Ms. Shin then brought successive labeling lawsuits against Nissin Foods, United Exchange Corp., and two lawsuits against Sanyo Foods. *Id.* (Shin Depo. at 25:2–25:6). Some of these lawsuits involved trans-fat claims, and some involved other issues. *See generally id* at Exh. B, C & D.

It is undisputed that Sanyo Foods' ramen noodle products have between 0g and 0.5g of trans fats per serving. *See* M'tn at 1:13-2:3 (discussing Sanyo Foods' testing showing that the products contain between 0 and 0.1g Trans Fats per serving). 0g Trans Fat" is explicitly defined by the FDA. The FDA on the Nutrition Facts Panel ("NFP")[1] requires a "statement of the number of grams of trans fat in a serving," unless the product "contain[s] less than 0.5 gram of total fat in a serving." 21 C.F.R. § 101.9(c)(2)(ii). The regulations further provide that "[i]f the serving contains less than 0.5 gram [of trans fat], the content, when declared, shall be expressed as zero." *Id.*

## II.    **Procedural History**

As discussed above, this is not Ms. Shin's only lawsuit against Sanyo Foods.

---

[1] The Nutrition Facts Panel is found on the back of Sanyo Foods' products. *See* Declaration of Juan Hong in Support of Motion for Class Certification at Exhibit 1.

4

On August 17, 2022, Ms. Shin filed an individual action in the Superior Court for the County of Los Angeles. Request for Judicial Notice ¶ 1 & Exh. A. Ms. Shin litigated that case for more than a year, and only then brought a motion to amend her individual complaint to add class claims. *Id.* at ¶ 2 & Exh. B. The state court denied the motion as untimely and prejudicial. *Id.* at ¶ 3 & Exh. C. Ms. Shin, undeterred, filed a second action against Sanyo Foods in Los Angeles Superior Court on November 9, 2023, which Sanyo Foods removed to this Court pursuant to the Class Action Fairness Act. *See* ECF 1; M'tn at 12:9-11.

Defendant Sanyo Foods moved to dismiss the new complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 12. Because of Ms. Shin's counsel's delay in moving to amend the state court complaint, Sanyo Foods was able to successfully argue that Ms. Shin's False Advertising Law and Consumer Legal Remedies Act claims were barred by the three-year statutes of limitation. ECF No. 27 at p. 9-10. Moreover, in response to Sanyo Foods' Motion, Ms. Shin's counsel conceded *sua sponte* that she has an adequate remedy at law, and argued that this Court lacked equitable jurisdiction over her claims for violation of the UCL and FAL, and the restitutionary relief sought under the CLRA. ECF No. 27 at p. 18-19. As a result of this concession, this Court dismissed the UCL claim with prejudice, and held that even if there were no statute of limitation issue, Ms. Shin's concession would still require the court to dismiss those claims, with prejudice. *Id.*

Since bringing this case, Ms. Shin's counsel has done nothing but oppose the Motion to Dismiss, and serve two sets of written discovery. Ball Decl. ¶ 6 & Exhs. Both sets of written discovery were served far too late to be of much use in supporting the instant Motion. *Id.*

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## **LEGAL STANDARDS**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  As such, Rule 23 "imposes stringent requirements for certification that in practice exclude most claims."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  "Before it can certify a class, a district court must be satisfied, after a **rigorous analysis**, that the prerequisites" of Rule 23 have been met.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (emphasis added).  "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of [Rule 23(a)] and at least one of the requirements of Rule 23(b)."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 989-90 (9th Cir. 2011).

Under Rule 23(a), a party must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  As to the three categories of Rule 23(b), Ms. Shin's motion invokes Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at 23(b)(3).

In her motion, Ms. Shin claims that when deciding class certification, "the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied."  M'tn at 4:18-21 (quoting *Sinatro v. Barilla Am., Inc.*, 2024 WL 2750018 (N.D. Cal. May 28, 2024)).  This is incorrect.  The notion that Ms.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Shin can simply plead her way to certification has been rejected by the Supreme Court and the Ninth Circuit.  Rather, to meet her burden, Ms. Shin "must **prove** the **facts** necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Olean*, 31 F.4th at 664 (emphases added).  This requires a "rigorous assessment" of the evidence and the "methods by which plaintiffs propose to use the [classwide] evidence to prove" their case.  *Id.* at 666.  Mere allegations do not suffice, as "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011).  Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc."  *Id.*  (emphasis in original).  This analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim."  *Id.* at 351; *see also Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960-61 (2021) (a court has an obligation before certifying a class to determine that Rule 23 is satisfied, "even when that requires inquiry into the merits"); *Ellis*, 657 F.3d at 981 (a court "must consider the merits if they overlap with" Rule 23's requirements).

## **ARGUMENT**

I.   **Class Certification Should Be Denied Because Ms. Shin Has Failed To Provide A Valid Damages Model, And Thus Cannot Establish 23(b)(3) Predominance.**

Ms. Shin proposes two damages models, a "full refund" model, and a completely nonexistent, entirely theoretical "choice-based conjoint analysis model." M'tn at 24:1-23.  A "full refund" model is inappropriate in this case.  And, contrary to Ms. Shin's unfounded assumptions, the Ninth Circuit in *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1101 (9th Cir. 2024) was crystal clear that putative class plaintiffs cannot do what Ms. Shin is trying to do here:   meet her burden under FRCP 23(b)(3), and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

with nothing more than attorney argument.

**A.    The "Full Refund" Model Is Inappropriate, Given That This Case Presents A Technical Violation Of FDA Regulations At Most, And Ms. Shin Regularly Enjoyed Sanyo Foods' Products For More Than A Decade.**

Ms. Shin asserts that a Full Refund model should apply to her fraud and warranty claims. However, "a plaintiff cannot be awarded a full refund unless the product she purchased was worthless." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (applying California law); *Krueger v. Wyeth, Inc*., 396 F. Supp. 3d 931, 951 (S.D. Cal. 2019) ("Plaintiff must present sufficient evidence the [disputed] products were worthless."); *Caldera v. J.M. Smucker Co*., No. CV 12-4936-GHK VBKX, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) ("Restitution based on a full refund would only be appropriate if not a single class member received any benefit from the products.").

Consequently, it is unsurprisingly that the Full Refund "model has been rejected by numerous courts when proffered in consumer product cases[.]" *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 577–78 (N.D. Cal. 2020). In particular, cases "involving *food* products [citation] are readily distinguishable because food products have some *inherent nutritional value,* and thus, the products [are] not worthless." *Allen v. Hyland's Inc*., 300 F.R.D. 643, 671 n.25 (C.D. Cal. 2014) (emphasis in original, internal citation omitted); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) ("Even if the beverages plaintiffs purchased were not all natural, they still had some market value that accrued to plaintiffs.").

This is because "the Full Refund model depends upon the assumption that not a single consumer received a single benefit, be it hydration, flavor, energy, or anything else of value, from Defendant's [products]." *In re POM Wonderful LLC*, No. ML 10-02199 DDP RZX, 2014 WL 1225184, at *3, n. 2 (C.D. Cal. Mar. 25,

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

2014). And "there is no question that food products have intrinsic value even when stripped of some advertised quality[.]" *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 639 (S.D. Cal. 2015). Thus, "[b]ecause the Full Refund model makes no attempt to account for benefits conferred upon Plaintiffs, it cannot accurately measure classwide damages." *In re POM*, 2014 WL 1225184, at *3.

Ms. Shin's experience and enjoyment of the product for decades demonstrates that the Full Refund model should not apply, for it fails to account for any value consumers received, such as hydration, calories, vitamins, and minerals. "By failing to account for the value actually realized by the class members from their purchase of the product, the [Full Refund] Model overstates the amount of restitution that might be owed to class members if plaintiffs prevail. It cannot be relied on to support the motion for class certification or to oppose defendant's motion for summary judgment." *Krommenhock*, 334 F.R.D. at 578. Ms. Shin's citation to *Diamondstar Ent. Holdings, LLC v. THH, LLC*, 641 F. Supp. 3d 849, 874 (C.D. Cal. 2022) does not compel a different conclusion as that case did not apply a Full Refund model.

### B.    Ms. Shin Cannot Meet Her Burden Under FRCP 23(b)(3) To Set Forth A Premium Price Model With Attorney Argument Alone.

"On a motion for class certification, plaintiffs [must] be able to show that their damages stemmed from the defendant's actions that created the legal liability and must show that damages are capable of measurement on a classwide basis, in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Sidibe v. Sutter Health*, 333 F.R.D. 463, 492 (N.D. Cal. 2019) (internal quotations omitted); *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir. 2013).

Here, Ms. Shin's counsel's proposal to use a "choice-based conjoint analysis" damages model is insufficient at this stage. "A class action plaintiff must establish that damages are capable of measurement on a classwide basis." *Lytle*, 114 F.4th at

9

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1024 (cleaned up). Although a model does not have to be completed or executed, the Plaintiff must come forward with expert testimony at the class certification stage supporting its proposed model. *Id*. Moreover, the expert's report and findings must be sufficiently tethered to the facts of the case and the theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

In this case, given that the remaining claims are warranty and misrepresentation claims, damages "measured by the difference between the value parted with and the actual value received" (*Miller v. Fuhu Inc*., No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794, at *19-20 (C.D. Cal. Dec. 1, 2015) and premium price damage models investigate "the 'relative importance' of a particular attribute, into a price premium[.]" *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1026 (C.D. Cal. 2015); *Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *13 (C.D. Cal. July 24, 2014) (conjoint analysis calculated "the price premium caused by L'Oreal's omission of a flammability warning from the Serum bottle" and "the premium classwide-every class member paid the same extra charge for each bottle of Serum").

Ms. Shin has failed to offer any evidence, let alone expert testimony, that damages can be calculated based on the difference between the market price and true value of the products. "With no evidence in the record demonstrating that these damages models can be feasibly and efficiently calculated, a class cannot be satisfied for purposes of seeking damages." *Jamba Juice Co.*, 308 F.R.D. at 244; *see also POM Wonderful*, 2014 WL 1225184, at *5 (finding predominance requirement not satisfied because plaintiffs' damages expert failed to "answer the critical question why the price difference existed, or to what extent is was a result of Pom's actions"). Accordingly, Ms. Shin has failed to satisfy her burden of proving that damages may be proven on a classwide basis.

Ms. Shin has not retained a damages expert of any kind.   No work of any

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

kind has been done to create any kind of premium price damages model. The sum total of Ms. Shin's counsel's efforts on this point is that he read a district court opinion that discussed a "choice-based conjoint analysis" damages model and apparently thought that same kind of model might work in this case. M'tn at 24:2-10 (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103 (N.D. Cal. 2018)). That is not even close to what is required, as the Ninth Circuit explained in detail in *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1101 (9th Cir. 2024).

Initially, not even the most qualified expert in the world could get away with what Ms. Shin's counsel is trying to do here. In other words, even the most accomplished expert must do more than say the words "conjoint analysis" to satisfy FRCP 23(b)(3). *Id.* at 1029 n.5; *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014) (rejecting proposed conjoint survey where expert simply "offer[ed] a basic description of the manner in which hedonic regression and conjoint analysis operate and assert[ed] that the exact specifications [the expert's analysis would] use will be solidified as discovery progresses"); *Miller,* 2015 WL 7776794, at *21-22 (C.D. Cal. Dec. 1, 2015) (concluding that expert's testimony that "it is possible and practical to design and conduct" a conjoint analysis was insufficient to establish predominance where expert had not designed such a survey).

This is because "these cases demand some assessment of the adequacy of Plaintiffs' common proof at class certification[.]" *Lytle*, 114 F.4th at 1027. At minimum, this requires enough information so that at least a "limited" *Daubert* analysis can take place – one that enables a district court judge to "mak[e] a predictive judgment about how likely it is the expert's analysis will eventually bear fruit." *Id.* at 1031. "This still requires determining whether the expert's methodology is reliable[.]." *Id.*

In short, this Court must find that a class plaintiff's damages model "will provide a reliable form of proof." *Id.* at 1032. "**Merely gesturing at a model or**

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**describing a general method**" as Ms. Shin's attorney has done "**will not suffice to meet this standard.**"  *Id.*  For this reason alone, Ms. Shin's Motion should be denied.

## II.  Class Certification Should Be Denied Because Ms. Shin Has Not Introduced Sufficient Evidence That The "0g Trans Fat" Claim Was Material.

Ms. Shin has further failed to meet her burden under FRCP 23(b)(3) because she has not introduced sufficient evidence that the alleged false claim "0g Trans Fat" on the front of the packaging is material to the class.

In seeking to certify a FRCP 23(b)(3) class, Ms. Shin must show that common questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (emphasis added) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  In other words, this "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "The predominance test of Rule 23(b)(3) is 'far more demanding' than the commonality test under Rule 23(a)(2)."  *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 607 (N.D. Cal. 2014) (quoting *Amchem*, 521 U.S. at 624).  "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)).  Ms. Shin's remaining claims are the California common law claims of fraudulent and negligent misrepresentation, breach of express warranty, and implied warranty of merchantability.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

As Ms. Shin recognizes, certification of these claims requires her to provide classwide proof that the alleged misrepresentation and/or breach of warranty is "material" to the class. M'tn at 19:22-26. Specifically, with respect to her negligent and fraudulent misrepresentation claims, both require a showing of "reliance" on the misrepresentation as one of the elements. *See Brickman v. Fitbit, Inc.*, No. 3:15-cv-2077, 2017 WL 5569827, at *7 (N.D. Cal. Nov. 20, 2017) (negligent misrepresentation); *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390, 2016 WL 11722907, at *7 (C.D. Cal. Nov. 14, 2016) (fraudulent misrepresentation). Reliance is ordinarily an individualized inquiry inappropriate for class certification, but classwide reliance can be presumed under California law if the misrepresentation is "material." *See Brickman*, 2017 WL 5569827, at *7 ("[R]eliance may be inferred" for negligent misrepresentation "when the facts show that material misrepresentations were made to the entire class."). Thus, if Ms. Shin "can prove materiality on a classwide basis, she can also demonstrate classwide reliance." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-1271, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016); *see also In re 5-Hour Energy Mktg & Sales Pracs. Litig.*, No. ML 13-2438, 2017 WL 2559615, at *6 (C.D. Cal. June 7, 2017) ("[T]o established predominance under Rule 23(b)(3), courts typically require that plaintiffs demonstrate that reliance . . . [is] subject to common proof."). Conversely, "[i]f the misrepresentation or omission is not material as to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) (quotation omitted).

A representation is material if a "reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* at 1022. This is "judged by an objective standard rather than any understandings specific to the individual consumer." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014). Similarly, with regard to Ms. Shin's claim for

13

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

breach of express warranty, although "[p]roof of reliance on specific promises or representations is not required, . . . class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentations would have been material to a reasonable consumer." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotations and citation omitted).

Ms. Shin fails to carry this burden. She must prove that a "reasonable man would attach importance to [the "0g Trans Fat" claim's] existence or nonexistence in determining his choice of action in the transaction in question," *Stearns*, 655 F.3d at 1022, but she has not offered any evidence or analysis as to whether or to what extent the "0g Trans Fat" claim factored into consumers' purchasing decisions. Instead, the only "evidence" she presents is that the phrase "Trans Fat-Free" was removed from sections of the Sanyo Foods website between April 2023 and April 2024. Mt'n at 20:8-21. Ms. Shin claims that the removal of this phrase was "clearly intentional," and points to other sections of the Sanyo Foods website stating that "[w]e check for trans fat," and "Trans Fat 0." *Id.* at 20:22-21:11. According to Ms. Shin, this "indicates that the statement could induce consumers to buy [Sanyo Foods] products, but [Sanyo Foods] stopped using it because the statement is false and unlawful." *Id.* at 22:3-5. Ms. Shin claims that it can therefore be "inferred" that Sanyo Foods "knew that reasonable consumers regard or are likely to regard" the "0g Trans Fat" statement as material. *Id.* at 20:5-7.

This argument is nonsensical and without merit. Nothing about the removal of the phrase "Trans Fat-Free" from the Sanyo Foods website remotely suggests that Sanyo Foods considers it to be material to consumers. If anything, it suggests the opposite, as Sanyo Foods evidently did not deem the claim important enough to keep on its website. And in any event, the statements on Sanyo Food's website provide no insight as to how consumers reacted to them. Materiality must be analyzed from the

14

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

perspective of the consumer—marketing assumptions by the maker of a food product as to what consumers may or may not find important are insufficient. *See In re 5-Hour Energy*, 2017 WL 2559615, at *8 (testimony by marketing director "does not convince the Court that materiality is subject to common proof because [it] addresses only how [5-Hour Energy] perceived its own branding techniques, and not how consumers reacted to the product name or the alleged misstatements on the [5-Hour Energy] label"). Thus, Ms. Shin cannot make the requisite showing "[a]bsent a consumer survey or other market research to indicate how consumers reacted to the [at-issue] statements, and how they valued these statements compared to other attributes of the product and the . . . market generally." *Id.*

Further, Defendants' website contains a number of statements (*see* https://sanyofoodsamerica.com/), and Ms. Shin has introduced no evidence whatsoever to suggest that consumers rely on the website at all, much less any single statement on it. *Compare Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 916 (2010) (evidence showed vast majority of visitors to website never viewed the "Additional Info" tab). "Just because the information was available on the website does not necessarily imply that visitors would likely have seen it, especially when there was a good deal of other information on the website." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 900-901 (N.D. Cal. 2015). As in *Ehret*, where the Court found insufficient evidence to establish consumer exposure to the website statements, the information regarding trans fat on Sanyo Foods' website required at least two clicks to get to it – it "was not highlighted or especially set off to ensure that visitors would see it." *Id.*

Finally, Ms. Shin puts forth no evidence whatsoever that any consumer would find it material that Sanyo Foods said the same thing on the front of its packaging as what the FDA mandates it say on the back. Without such evidence, it is dubious indeed that any consumer without a direct financial interest in the outcome of this

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

action, such as Ms. Shin, would care about what may be – at most – traces of trans fat in the product. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 577 (C.D. Cal. 2014) (finding plaintiffs had failed to demonstrate materiality, and holding that "[t]he evidence plaintiffs proffer to show materiality . . . is **weak at best**" where "plaintiffs adduce no survey evidence concerning the actual reaction of consumers to the '100% Natural' label on Wesson Oils specifically or the presence of such a label on cooking oils generally" (emphasis added)).

Accordingly, Ms. Shin's evidence falls short of providing common proof of materiality. *See Jones v. ConAgra Foods, Inc.*, No. C 12-1633, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) (predominance not met; no evidence of materiality where plaintiffs' expert "did not explain **how** the challenged statements, together or alone, were a factor in any consumer's purchasing decisions . . . as opposed to, or in addition to, price, promotions, retail position, taste, texture, or brand recognition" (emphasis in original)); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018) (predominance not met; no evidence of materiality where plaintiffs' expert's survey was "not tethered to consumer's purchasing behavior"); *Gross v. Vilore Foods Co.*, No. 20cv894, 2022 WL 1063085, at *7 (S.D. Cal. Apr. 8, 2022) (survey failed to show evidence of materiality where it "did not isolate the artificial flavoring as the participant's reason for not purchasing" the beverages at issue and accordingly "provide[d] no way of knowing what motivate" participants).

Moreover, in contrast to Ms. Shin's arguments, the evidence suggests that the "0g Trans Fat" claim on the Sanyo Foods' ramen noodle products is **not** material to consumers. It is undisputed that the products have between 0g and 0.5g of trans fat per serving. For such products with less than 0.5 grams of trans fat per serving, the applicable FDA regulations require that the NFP express the trans fat content as **zero**. 21 C.F.R. § 101.9(c)(2)(ii). If a "0g Trans Fat" claim on a food product with less than

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

0.5 grams of trans fat per serving was material to the reasonable consumer, one would assume that the FDA regulations would require it to be disclosed. But they do not.

In *Chacanaca v. Quaker Oats*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010), the Court specifically recognized that from the FDA's perspective, there is no difference between a "0g Trans Fat" claim on the front of the package and what the FDA requires on the back of the package in the Nutrition Facts Panel. "[The FDA] has not explicitly required that express content claim apply the rounded figure that appears in the [NFP], reasoning instead that the difference between actual and rounded values are 'nutritionally insignificant.'" *Id.* at 1121. Accordingly, "if 'nutritionally insignificant amounts' of less than 0.5 grams trans fats means the same thing, according to [FDA] regulations as '0 grams', then the use of the latter language in an express nutrient content claim would *not* be misleading . . . ." *Id.*

Because Ms. Shin has not presented—and indeed, cannot present—common proof of classwide materiality of the alleged misrepresentations, she is not entitled to a presumption of reliance and has failed to show that common issues do not predominate over individualized issues under FRCP 23(b)(3). Thus, class certification should be denied.

### III. Class Certification Should Be Denied Because Putative Class Counsel Is Not Adequate Under FRCP 23(a)(4) And 23(g).

Ms. Shin must also establish that her counsel is adequate under FRCP 23(a)(4) and 23(g). *Varela v. Indus. Prof'l & Tech. Workers*, No. CV 08-1012 SVW (RZX), 2009 WL 10670788, at *3 (C.D. Cal. Oct. 28, 2009) (stating that "the Court believes that Plaintiffs are required to establish adequacy of counsel as a threshold requirement in order to have the class certified. Plaintiff's failure to show adequacy of counsel under Rule 23(g) is effectively a failure to meet the adequate representation requirement of Rule 23(a)(4) for class certification."); Fed. R. Civ. P. 23(g)(1). A court must consider the following factors when appointing class

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

counsel: "(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class." Fed. R. Civ. P. 23(g)(1)(A). A court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). For the reasons below, Ms. Shin cannot meet the adequacy requirements set forth in Fed. R. Civ. P. 23(g)(1).

### A. The Work Ms. Shin's Counsel Has Done To Identify And Investigate The Claims In This Action Is Woefully Inadequate.

Class counsel must pursue the litigation vigorously. *Motty v. First Student, Inc.* No. 2:15-CV-7463-ODW (E), 2016 WL 4498452, at *3 (C.D. Cal. August 26, 2016) (quotations and citation omitted). "In assessing whether class representatives and their counsel will vigorously prosecute a class action litigation, courts may consider the actual progress of the proceedings to that point. Delays in seeking class certification, a failure timely to prosecute the litigation, and any failure to comply with reasonable disclosure obligations or discovery requests are factors that suggest that the class representative is inadequate." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) (citing *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977)).

Ms. Shin's counsel has failed to vigorously pursue this litigation. Ms. Shin filed this action on November 9, 2023. ECF No. 1. Aside from responding to Sanyo Foods' motion to dismiss, Ms. Shin's counsel did nothing for almost nine months to progress the proceedings. Indeed, Ms. Shin's counsel did not serve a single discovery request until the Court ordered Ms. Shin to file her motion for class certification within 75 days of August 13, 2024. ECF No. 27; Ball Decl. ¶ 6. Even then, it took Ms. Shin's counsel several weeks to serve only one set of requests for production and one set of requests for admission. Of note, the written discovery

18

1   was simply recycled requests Ms. Shin's counsel propounded previously in the

2   California state court case.  Ball Decl. ¶ 6.  Ms. Shin's counsel could not even be

3   bothered to draft requests tailored to the current litigation.  Even further, Ms. Shin's

4   counsel did not take a single deposition or, as discussed in detail above, take any

5   action to retain a damages expert.  Rather than vigorously pursue the litigation, Ms.

6   Shin's counsel has done the bare minimum.

7        "Courts should also consider the quality of counsel's work up to that point in

8   the litigation."  *Motty,* 2016 WL 4498452 at *3 (citing *Sweet v. Pfizer*, 232 F.R.D.

9   360, 371 (C.D. Cal. 2005)).  Even a cursory examination reveals that the quality of

10  Ms. Shin's counsel's work is lacking.  To date, his substantial errors in judgment

11  and delays evidence his inadequacy as counsel under Fed. R. Civ. P. 23(a)(4).

12  Nowhere is this clearer than his handling of the opposition to the motion to dismiss.

13  As the Court correctly noted, Ms. Shin's counsel made "a remarkable unforced

14  error" during the briefing by conceding that he had an adequate remedy at law,

15  leading the Court to dismiss the UCL, CLRA, and FAL claims.  ECF No. 27, at p.

16  18-19.  Counsel's error prejudiced the class by limiting the available claims.

17       This error was compounded by counsel's delay in seeking to add class

18  allegations in the existing state-court case.   Ms. Shin's counsel delayed bringing a

19  motion to amend to bring class claims in that case for more than a year after filing.

20  RJN ¶ 2 & Exh. B.   The Court denied the motion as untimely.   *Id.* at ¶ 3 & Exh. C.

21  To bring these class claims, then, Ms. Shin's counsel was forced to file a separate

22  action, which led directly to the CLRA and FAL claims getting dismissed as time

23  barred.   ECF No. 27, at 9-10.

24       Although courts have recognized that "[a]ll lawyers make mistakes and

25  perfection is not the standard for Rule 23(a)(4)" plaintiff counsel's actions to date

26  indicate that he cannot meet the adequate representation requirement of Rule

27  23(a)(4).  *Kandel*, 264 F.R.D. at 635.

28
SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

### B.   Ms. Shin's Counsel Lacks Experience And The Necessary Resources To Handle Complex Consumer Class Action Lawsuits.

Simply stating that one has experience pursuing class actions is insufficient to satisfy the requirements under Fed. R. Civ. P. 23(g).  *See*, 2016 WL 4498452 at *4 ("Just because Plaintiff's counsel has a history pursuing class actions does not mean the work currently before the Court is of sufficient quality to ensure that the class members' rights and interests will be properly protected.")  Yet, this is exactly what Ms. Shin's counsel has done.  Declaration of Juan Hong ¶ 11.  His sole evidence as to his class counsel qualifications is in para. 11 of his declaration where he states: "Since 2004 I have represented employers, employees and consumers, [sic] in class actions for wage hour disputes [sic] under private attorney general act (PAGA) [sic], union representation issues, and consumer protections [sic]."  Counsel's declaration is insufficient to demonstrate that he is experienced enough to handle this action.  *See Motty,* 2016 WL 4498452 at *4.

Moreover, a Westlaw search for cases handled by Ms. Shin's counsel retrieves only one class certification decision he was involved in – which he lost.  *Shin v. Lee*, No. SACV 16-01225-CGL, 2018 WL 3816739 (C.D. Cal. Mar. 16, 2018) (denying class certification in class action concerning water ionizers).  As such, there is no evidence before the Court indicating Ms. Shin's counsel has the necessary experience to proceed as class counsel.

Moreover, Ms. Shin's counsel provides no evidence demonstrating he has the necessary resources to represent the proposed class.  There is ample reason to think Ms. Shin's counsel, a solo practitioner, lacks the necessary resources to prosecute this action.   The fact that he did not retain damages experts – which are extremely expensive in these premium price cases, and often run well into the six-figures (Ball Decl. ¶ 7) – suggests as much.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**C.    Counsel Lacks Knowledge Of The Applicable Law As Demonstrated By His Misreading Of *Lytle v. Nutramax Laboratories, Inc.***

Failure to properly consider relevant legal issues or argue tenable legal positions are grounds to find that class counsel does meet the adequacy requirements under Fed. R. Civ. P. 23(g).  *See Saulic v. Symantec Corp.*, 596 F. Supp. 2d 1323, 1329 (finding Plaintiff's counsel inadequate because"[t]hey fail[ed] to argue tenable legal positions."); *Kandel*, 264 F.R.D. at 634 (finding that class counsel was inadequate because, amongst other reasons, counsel "failed to consider the important standing problems faced by the named Plaintiffs.").  As noted above, Ms. Shin stakes her entire argument on a clear misreading of *Lytle v. Nutramax Laboratories, Inc.*, arguing that she does not actually need to hire an expert at this stage to design a premium price model, but can instead at the class certification stage rely on nothing more attorney argument that at some point there might be a compliant premium price model.  *Lytle* stands for the exact opposite proposition. *Lytle*, 114 F.4th at 1027, 1031.  Such a clear oversight indicates that Ms. Shin's counsel lacks the requisite knowledge to adequately represent the proposed class.

**IV.    This Court Should Decline To Certify A Nationwide Class Because Common Issues Of Law Do Not Predominate.**

Ms. Shin seeks to certify a nationwide class, and so the key issue in the predominance inquiry is whether California law will govern the entire class, or whether each state's laws will govern the claims of its own residents.   *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, *7 (N.D. Cal. May 28, 2021) (order denying class certification in part because common issues of law do not predominate) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).  Because there is no choice of law clause, California's choice of law rules apply.   *Id.* at *8.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant contacts to the claims of each class member.  *Id.* (citing *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)).  If the contacts are sufficient, the burden shifts to the opposing party to demonstrate that foreign law should apply to the class claims.  *Id.* California law may only be used on a class-wide basis if the interests of other states are not found to outweigh California's interest, using a three-step test:   (1) the court determines whether the relevant law with regard to the particular issue is the same or different; (2) If there is a difference, the court examines each jurisdiction's interest in the application of its own law to determine whether a true conflict exists; and (3) if there is a true conflict, the court considers which state's interest would be more impaired, and then applies the law of that state. *Id.* (quoting *Mazza*, 666 F.3d at 590).

<u>Whether there is a sufficient aggregation of contacts with California</u>.  Ms. Shin appears to assert that California law applies solely because Defendant Sanyo Foods is a California corporation and has its principal place of business in California.   M'tn at 12:9-11.   Judge Carney in a previous case brought by Ms. Shin's counsel held that this alone was not enough to demonstrate that California has "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class. . . to ensure that the choice of [California] law is not arbitrary or unfair."   *Shin v. Lee*, No. SACV16-01225-CJL, 2018 WL 3816739 (March 26, 2018).

Moreover, Sanyo Foods is dubious that this is sufficient to meet Ms. Shin's initial burden, since California law "considers . . . where the misrepresentations were communicated to the customer as the place of the wrong." *Darisse*, 2016 WL 4385849, at *15 (citing *McCann v. Foster Wheeler, LLC*, 48 Cal. 4th 68, 94 (2010)). However, assuming *arguendo* that Sanyo Foods' California citizenship is sufficient,

22

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

it is clear that foreign law will apply to the unnamed class members' claims for breach of warranty and misrepresentation.

The law of express warranty varies across the 50 States.   In *Darisse*, the district court engaged in an exhaustive analysis of express warranty law across the 50 states in a consumer protection case substantively indistinguishable from this one.  The court found material differences in terms of requiring privity, whether there was or was not a reliance element, and variations in the requirement of notice.  2016 WL 4385849 at *11 (citing cases from many states discussing the material differences).

The law of the implied warranty of merchantability varies across the 50 states.  The district court in *Darisse* engaged in a similar analysis on the law of breach of the implied warranty of merchantability, and found significant differences regarding privity, notice, the availability of class actions, and the definition of merchantability itself.   *Id.* at *12 (citing cases from many states discussing the material differences).

The law of common-law fraud varies across the 50 States.  Finally, the district court did the same with the law of common law fraud.  The court found material differences in whether or not reliance can be inferred, the burden of proof required for fraud claims (where most states require clear and convincing evidence) and the applicable statutes of limitation.   *Id.* at *13-*14.

The 50 States have an interest in having their own laws applied.  Given that these differences are material, it is clear that other states have an interest in applying their law to claims brought by their citizens.   "[T]he . . . warranty[] and fraud laws of every state are important.  The law reflects each state's reasoned judgment as to what conduct is permitted or prohibited in that state."  *Id.* at *14 (citing *Mazza*, 666 F.3d at 591).  Like *Darisse*, this case is the same in that "[t]his case implicates each state's interest.   The proposed nationwide class consists of members from 50 states,

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

and [plaintiff] alleges that consumers from each of those states were misled into buying and using the [product] in their state." *Id.*

<u>Other States' interests are most impaired</u>.  Like in *Darisse*, although California does have an interest here, it is much more attenuated, given that California considers the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of wrong." *Id.* at \*15 (citing *McCann*, 48 Cal. 4th at 94 n.12.).   The place of the wrong here is not California, but the state where each buyer of Sanyo Foods product saw the labeling and bought the product.  *Id.*   Those states have a compelling interest in protecting their consumers from in-state injuries caused by an out-of-state company doing business within their borders." *Id.*

Accordingly, because the laws of the 50 states must be applied in this case, common questions of law do not predominate over the questions affecting individual class members as required by Rule 23(b)(3).   Certification of the entire nationwide class under California law is thus improper.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## **CONCLUSION**

For the foregoing reasons, Defendant Sanyo Foods Corp. of America respectfully requests that this Court deny Plaintiffs' Motion for Class Certification in its entirety.

Dated: November 8, 2024                     **K&L GATES LLP**

By: */s/ Matthew G. Ball*
Matthew G. Ball
Tyler G.D. Anders
Attorneys for Defendants
Sanyo Foods Corporation of America, et al.

SANYO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION