UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-10485-SVW-MRW | Date | January 29, 2025 |
| Title | *Sue Shin v. Sanyo Foods Corp. of America* | | |

| | |
|---|---|
| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |

| | |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION [38]

Before the Court is Plaintiff Sue Shin's ("Plaintiff") amended motion for class certification. ECF No. 38. For the following reasons, the motion is DENIED.

## I. Factual and Procedural Background

### A. Factual Allegations

The Court has recapped the facts of this case extensively in its prior orders. To provide context to the reader, the Court will repeat those facts in brief below.

Defendant Sanyo Foods "manufactures and sells Sapporo Ichiban packaged noodle products."[1] Defs.' Mot. to Dismiss 1, ECF No. 12. Between August 2018 and December 2019, Plaintiff purchased

[1] Normally, due to higher evidentiary standards at the class certification stage, plaintiffs support motions for class certification with various pieces of evidence beyond the allegations in their complaint—i.e., documents, depositions, declarations, etc. Here, Plaintiff supports her motion for class certification with only two declarations from herself and her attorney respectively. These

:

Initials of Preparer PMC

two to ten packages of Sapporo Ichiban Miso Ramen per week from groceries and convenience stores in the Los Angeles area. Pl.'s Opp'n to Mot. to Dismiss 1, ECF No. 12; Notice of Removal, Ex. A (hereinafter, "Compl."), ¶ 2, ECF No. 1-1. Eight of Sanyo Food's packaged noodle products, including the product purchased by Plaintiff, contain the ingredient palm oil. Compl. ¶ 67, ECF. On the front of their packaging, these products display the claim "0g Trans Fat." *Id.* ¶ 65. Plaintiff allegedly relied on this claim when making her purchases. *Id.* ¶ 7.

In December 2019, Plaintiff came to believe that Sanyo Food's products contained "more than 0g but less than .5g of trans fat."[2] *Id.* ¶ 38. As evidence of the existence of trans fat in Sanyo's products, Plaintiff refers to a notice, published by the Food and Drug Administration, stating that "all refined edible oils contain some trans fat." *Id.* ¶ 67 (citing Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015)). Plaintiff alleges that the palm oil in Sanyo Food's products is refined, and therefore must contain some trans fat. *Id.*

Plaintiff further alleges that, in November 2022, Defendants "knew and should have known" via laboratory testing that Sanyo Foods' products contain more than zero grams of trans fat per serving. *Id.* ¶ 23. In making this allegation, Plaintiff refers to a test conducted by Sanyo Foods in October 2022.[3] Pl.'s Opp'n to Mot. to Dismiss, Ex. 2, ECF No. 15. For each of the twelve products tested, the amount of trans fat was recorded as "<0.10g/100g." *Id.* Defendants contend that the minimum amount of trans fat which a test of this type can detect is one tenth of a gram. Defs.' Reply in Support of Mot. to Dismiss 2, ECF No. 18. In other words, the test is not precise enough to differentiate between zero and one tenth of a gram of trans fat. Therefore, the test may or may not have revealed that trans fat is present in Sanyo Food's products.

---

declarations are largely duplicative of the allegations in her complaint (Plaintiff's declaration cites her complaint directly), and thus the Court will recap the facts of this case with reference to Plaintiff's complaint.

[2] Plaintiff does not explain how she came this realization.

[3] Plaintiff provides no further context on these laboratory tests.

:

Initials of Preparer PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-10485-SVW-MRW | Date | January 29, 2025 |
| Title | *Sue Shin v. Sanyo Foods Corp. of America* | | |

Lastly, the Sanyo Foods products referred to in the complaint do not feature a label directing consumers to "see nutrition information for total fat, saturated fat, and sodium contents," despite containing elevated amounts of those nutrients. Compl. ¶ 63. Plaintiff maintains that she would not have purchased Sanyo Foods' products if they had featured such a label. *Id.*

**B. Procedural History**

On August 17, 2022, Plaintiff filed a complaint in the Superior Court of the State of California, County of Los Angeles, against Sanyo Foods and Takeo Sato, Sanyo Foods' general manager. Defs.' Request for Jud. Notice 3, ECF No. 13. Plaintiff amended the complaint on December 12, 2022. *Id.* The Amended complaint stated four causes of action: two violations of California's Unfair Competition Law ("UCL"); a violation of California's False and Misleading Advertising Law ("FAL"); and a violation of California's Consumers Legal Remedies Act ("CLRA"). Defs.' Request for Jud. Notice, Ex. B, ¶¶ 69–93, ECF No. 13. On October 5, 2023, Plaintiff sought the State court's leave to convert her action into a class action. Defs.'s Request for Jud. Notice 3, ECF No. 13; Defs.' Mot. to Dismiss 3–4, ECF No. 12. Leave to amend was denied by the State court on the grounds that expanding the litigation to a class action would "result in prejudice to Defendant in the form of an exponential increase in the costs to defend [the] action." Defs.' Mot. to Dismiss 4, ECF No. 12.

Subsequently, Plaintiff filed this class action in the Superior Court of the State of California, County of Los Angeles, on November 9, 2023. Notice of Removal ¶ 3, ECF No. 1. In addition to the causes of action listed above, Plaintiff has introduced five additional claims: unjust enrichment; fraudulent misrepresentation; negligent misrepresentation; breach of express warranty; and breach of implied warranty of merchantability. Compl. ¶¶ 91–155. Defendant removed the case to federal court on December 14, 2023. Notice of Removal, ECF No. 1.

On January 22, 2024, Defendants moved to dismiss Plaintiff's complaint. ECF No. 12. On August 13, 2024, the Court granted in part and denied in part Defendants' motion. ECF No. 27. Ultimately, the Court allowed Plaintiff's fraudulent misrepresentation, negligent misrepresentation, breach of express

:

Initials of Preparer PMC

warranty, and breach of implied warranty claims to go forward, but only against Sanyo Foods. *Id.* The Court dismissed all claims against Takeo Sato. *Id.*

In its order allowing four of Plaintiff's claims to go forward, the Court instructed Plaintiff to move for class certification within 75 days. *Id.* On October 28, 2024, Plaintiff moved for class certification. ECF No. 32. Specifically, Plaintiff moved to certify the following class and subclass:

**Nationwide Class**
All U.S. citizens who purchased the SAPPORO ICHIBAN Product in their respective state of citizenship for personal and household use and not for resale during the Class Period.

**California Sub-Class**
All California citizens who purchased SAPPORO ICHIBAN Product in California for personal and household use and not for resale during the Class Period.

Plaintiff defined the "Class Period" as November 2019 until the date notice is disseminated to the class.

On December 6, 2024, the Court denied Plaintiff's motion for class certification without prejudice. ECF No. 37. On December 20, 2024, Plaintiff filed an amended motion. ECF No. 38. Defendant opposed. ECF No. 40.

## II. Legal Standard

In determining whether to certify a class, "the district court is bound to take the substantive allegations of the complaint as true," however, "the court also is required to consider the nature and range of proof necessary to establish those allegations." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n. 7 (9th Cir. 1975)). Indeed "[a] party seeking to certify a class may not merely rest on his pleadings."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-10485-SVW-MRW | Date | January 29, 2025 |
| Title | *Sue Shin v. Sanyo Foods Corp. of America* | | |

*Nevarez v. Costco Wholesale Corp.*, No. 2:19-CV-03454-SVW-SK, 2019 WL 7421960, at *2 (C.D. Cal. Dec. 26, 2019).

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News*, 737 F.3d 538, 542 (9th Cir. 2013).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Rule 23(a) provides as follows:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). To certify a class, the district court must conduct a "rigorous analysis" and conclude that all four requirements—commonly shorthanded as numerosity, commonality, typicality, and adequate representation—are satisfied. *Wang*, 737 F.3d at 542–43 (quoting *Wal-Mart*, 564 U.S. at 349).

"In addition to the requirements of Rule 23(a), a proposed class must also meet the requirements of one or more of the 'three different types of classes' set forth in Rule 23(b)." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quoting *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013)). Here, Plaintiff seeks certification under Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

:

Initials of Preparer PMC

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate. Though there is substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"'[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3),' and must carry their burden of proof 'before class certification.'" *Olean*, 31 F.4th at 665 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014)). The Ninth Circuit has clarified that a plaintiff must satisfy its burden under Rule 23 according to a preponderance of the evidence standard. *Id.*

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (citation and internal quotation marks omitted). That said, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## III. Discussion

### A. Rule 23(b)(3)

Plaintiff seeks class certification through 23(b)(3). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) class resolution is "superior to other methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). "The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a) . . . ." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (citing *Wal-Mart*, 564 U.S. at 349). Accordingly, "courts must consider cases examining both subsections in performing a Rule 23(b)(3) analysis." *Id.*

"In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Id.* (citing *Wal-Mart*, 564 U.S. at 349–50). "[T]o prove there is a common question of law or fact that relates to a central issue in [a case], plaintiffs must establish that essential elements of the cause of action . . . are capable of being established through a common body of evidence, applicable to the whole class." *Id.* (internal quotations omitted).

"To ensure that common questions predominate over individual ones, the court must 'ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.'" *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (citing *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016)). "If many class members have no claim whatsoever because they 'were never exposed to the challenged conduct to begin with,' the class does not satisfy Rule 23(b)(3)." *Id.* (citing *Torres*, 835 F.3d at 1138; *Moore v. Apple*, 309 F.R.D. 532, 542 (N.D. Cal. 2015)).

**i. Damages**

As part of the Rule 23(b)(3) predominance requirement, "plaintiffs [must] be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) (quotations omitted). This requires that plaintiffs "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

This does not mean that damages across members of a class must be identical. *See Nguyen*, 932 F.3d at 817. Quite the contrary, "uncertainty regarding class members' damages does not prevent

certification of a class as long as valid method has been proposed for calculating those damages." *Id.* (quotations omitted).

Moreover, "there is no general requirement that an expert ***actually apply*** to the proposed class an otherwise reliable damages model in order to demonstrate that damages are susceptible to common proof at the class certification stage." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024) (emphasis added). Rather, "class action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Id.*

"In applying this test to an unexecuted damages model, the question a district court must ask is whether the model will likely be able to generate common answers at trial." *Id.* at 1032. Importantly, "[m]erely gesturing at a model or describing a general method will not suffice to meet this standard. Rather, plaintiffs—or their expert—must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id.*

For example, in *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014), the Court denied class certification because the plaintiffs provided "no evidence in the record demonstrating that [the plaintiffs'] damages models can be feasibly and efficiently calculated." The plaintiffs brought CLRA, UCL, and FAL claims against the defendant (Jamba Juice Company) based on allegations that the defendant's smoothie kits falsely represented that they were "all natural." *Id.* at 235. To support class certification, the plaintiffs "propose[d] three methods for calculating damages: (1) restitution of the full purchase price, (2) restitution from Defendant's net profits, and (3) restitution from the portion of revenue attributed to the challenged ingredient." *Id.* at 242. The plaintiffs, however, "failed to submit *any* evidence establishing that damages [could] be feasibly and efficiently calculated." *Id.* at 243 (emphasis in original). Accordingly, the court held that "a class cannot be satisfied for purposes of seeking damages" because "no evidence in the record demonstrate[ed] that [the plaintiffs'] damages models [could] be feasibly and efficiently calculated." *Id.*

:

Initials of Preparer PMC

Here, just as in *Jamba Juice*, Plaintiff "failed to submit *any* evidence establishing that damages can be feasibly and efficiently calculated," and thus she comes woefully short of fulfilling the requirements set out in *Lytle*. *See id.*; 114 F.4th at 1032. Plaintiff's claims are misrepresentation and warranty claims. For misrepresentation claims, "damages are ordinarily measured by the difference between the value parted with and the actual value received." *Miller v. Fuhu Inc.*, No. 2:24-cv-06119-CAS, 2015 WL 7776794, at *19-20 (C.D. Cal. Dec. 1, 2015). For warranty claims, damages are traditionally "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." *S.M. Wilson & Co. v. Smith Intern, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978). Accordingly, to certify a class for these claims, Plaintiff must "establish[] that [these misrepresentation and warranty] damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34.

Plaintiff, in her briefing, proposes that the Court calculate class damages through either a full refund model or conjoint analysis for premium price model. Proposing that the Court apply one of those two models, however, is the full extent of Plaintiff's damages analysis. Indeed, with respect to the full refund model, Plaintiff suggests that "a plaintiff could argue that each class member bought an item that was worth nothing, rather than what the class members paid for their items, such that each class member would be entitled to a refund of what they paid for their item." Plaintiff's Motion for Class Certification at 23, ECF No. 32. Similarly, regarding the conjoin analysis model, Plaintiff merely asserts that "a plaintiff could retain an economist as an expert witness to derive a formula for calculating each class member's damages." *Id.* Plaintiff supplements these assertions with no additional analysis. In fact, Plaintiff did not even retain a damages expert.

When the Court identified this deficiency in its previous order denying class certification, Plaintiff failed to substantively respond. Instead of "chart[ing] out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case," Plaintiff insists that their mere identification of a conjoin analysis model as a potential damages model is sufficient

:

Initials of Preparer PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-10485-SVW-MRW | Date | January 29, 2025 |
| Title | *Sue Shin v. Sanyo Foods Corp. of America* | | |

for class certification. Not so. The Ninth Circuit is clear: "[m]erely gesturing at a model or describing a general method will not suffice to meet [the 23(b)(3) damages] standard." *Lytle*, 114 F.4th at 1032.

The case law cited by Plaintiff is unpersuasive. Plaintiff cites to *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 550, 553 (N.D. Cal. 2021) to support the proposition that: "[i]n mislabeling cases . . . courts routinely hold that choice-based conjoint models that are designed to measure the amount of the alleged malpresentation at issue satisfy *Comcast*'s requirements." But that proposition is not what is at issue here. The Court does not take issue with the concept that a choice-based conjoint model could be sufficient to measure damages in a consumer class action. Rather, the problem for Plaintiff is they failed to provide "all necessary data" to "demonstrate" that the choice-based conjoint model "will be viable as applied to the facts of [this] case." *See Lytle*, 114 F.4th at 1032. Indeed, that requirement is underscored in the very case Plaintiff relies on—*Vizcarra*—where the court ultimately ***denied*** class certification because the specific conjoint study proposed by the plaintiff's expert suffered from methodological flaws that made it "incapable of measuring damages that are consistent with [the plaintiff's] theory of liability." 339 F.R.D. at 555. Here, Plaintiff does not even provide the Court the chance to evaluate whether Plaintiff's damages model suffers from similar methodological flaws, as Plaintiff provides no details on how her proposed choice-based conjoint model would apply to this case.

In sum, instead of demonstrating that her damages model "is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial," Plaintiff "[m]erely gesture[es] at a [damages] model" and "describe[es] a general method" of calculating damages. *See Lytle*, 114 F.4th at 1032. Such bare description is insufficient to justify class certification.[4] *See id.*; *Jamba Juice*

[4] As an aside, application of a full refund model of damages would be inappropriate regardless of the evidence provided by Plaintiff. "[T]he Full Refund model depends upon the assumption that not a single consumer received a single benefit, be it hydration, flavor, energy, or anything else of value, from Defendant's [products]." *In re Pom Wonderful LLC*, No. 10-cv-02199-DDP, 2014 WL 1225184, at *3 n.2 (C.D. Cal. Mar. 25, 2014). And "there is no question that food products have intrinsic value even when stripped of some advertised quality[.]" *Makeeff v. Trump Univ. LLC*, 309 F.R.D. 631, 639 (S.D. Cal. 2015). Thus, "[b]ecause the Full Refund model makes no attempt to account for benefits conferred upon Plaintiffs, it cannot accurately measure classwide damages." *In re Pom*, 2014 WL 1225184, at *3.

:

Initials of Preparer PMC

*Co.*, 308 F.R.D. at 244 (denying class certification in a consumer false advertising case when the plaintiffs "failed to submit *any* evidence establishing that damages [could] be feasibly and efficiently calculated").

**ii. Predominance**

Even if Plaintiff's class certification did not fail due to a lack of evidence regarding damages, Plaintiff also fails to show that common questions will predominate over individual ones, as is required by Rule 23(b)(3). As stated above, to establish predominance, "plaintiffs must establish that essential elements of the cause of action . . . are capable of being established through a common body of evidence, applicable to the whole class." *Olean Wholesale Grocery Coop.*, 31 F.4th at 664 (internal quotations omitted).

In this case, that means that Plaintiff must show that her four remaining causes of action—fraudulent misrepresentation, negligent misrepresentation, breach of express warranty, and breach of implied warranty—"are capable of being established through a common body of evidence." *See id.* As explained below, Plaintiff fails to make such a showing.

**a. Fraudulent Misrepresentation, Negligent Misrepresentation, and Breach of Express Warranty**

Under California law, common-law fraud—or intentional misrepresentation—requires the establishment of the following elements: (i) misrepresentation; (ii) scienter; (iii) intent to induce reliance; (iv) justifiable reliance; and (v) injury. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Caldo v. Owens-Ill., Inc.*, 125 Cal. App. 4th 513, 519 (Ct. App. 2004). Accordingly, both fraudulent and negligent misrepresentation require that the plaintiff show reliance on the misrepresentation in question.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-10485-SVW-MRW | Date | January 29, 2025 |
| Title | *Sue Shin v. Sanyo Foods Corp. of America* | | |

While whether a class member relied on a misrepresentation is normally an individualized question, "[a] presumption 'of reliance arises whenever there is a showing that a misrepresentation was material,' i.e., that 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction.'" *Mullins v. Premier Nutrition Corp.*, No. 13-cv-1271, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)). "Accordingly, if [Plaintiff] can prove materiality on a classwide basis, she can also demonstrate classwide reliance." *See id.*

In addition to being an element of her misrepresentation claims, materiality is also a central question to Plaintiff's express warranty claims. "To prevail on a breach of express warranty claim under California law, a plaintiff must prove that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods*, 90 F. Supp. 3d 919, 984 (C.D Cal. 2015) (quotations omitted). Normally, for express warranty claims, "[p]roof of reliance on specific promises or representations is not required." *Id.* (citing *Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213, 1227 (Ct. App. 2010)). "Accordingly, courts have found that breach of express warranty claims are appropriate for class treatment where whether defendant misrepresented its product and whether such misrepresentation breached warranties are issues common to members of the putative class." *Id.* at 985. "As with California's consumer protection statutes, however, class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation ***would have been material to a reasonable consumer***." *Id.* (emphasis added); *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (also finding that class certification of express warranty claims requires that the misrepresentation be material); *Gross v. Vilore Foods Co., Inc.*, No. 20-cv-894, 2022 WL 1063085, at *8 (S.D. Cal. Apr. 8, 2022) (same).

In sum, class certification Plaintiff's fraudulent misrepresentation, negligent misrepresentation, and express warranty claims each require that Plaintiff prove materiality on a classwide basis.

:

Initials of Preparer PMC

Plaintiff fails to show that there is sufficient evidence of classwide materiality. To start, Plaintiff provides no direct evidence regarding materiality—i.e., whether a reasonable man would attach importance" to the "existence or nonexistence" of Plaintiff's representation that its products have zero grams of trans fat when choosing whether to buy Defendant's products. *See id.* Plaintiff provides no surveys, no depositions, no experts.

What little evidence Plaintiff does provide fails to establish class wide materiality. **First**, Plaintiff provides evidence that, at some point between April 2023 and April 2024, Defendant removed the phrase "Trans Fat-Free" from certain sections of Defendant's website that described Defendant's products. Declaration of Juan Hong, Ex. A-B, ECF No. 38-1. Defendant argues that from this evidence the court can "infer" that "reasonable consumers regard or are likely to regard [Defendant's misrepresentation] as important to reasonable consumers. Not so. To be sure, that Defendant removed "Trans Fat-Free" from its online description of its products may reveal information about Defendant's perspective. But materiality depends on the perspective of the consumer, not the perspective of the defendant—marketing assumptions by the maker of a food product as to what consumers may or may not find important are insufficient. *See In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) (holding that testimony by marketing director "does not convince the Court that materiality is subject to common proof because [it] addresses only how [5-Hour Energy] perceived its own branding techniques, and not how consumers reacted to the product name or the alleged misstatements on the [5-Hour Energy] label").

**Second**, Plaintiff relies on a market survey from a market research company finding that, in 2015, that a high percentage of "free-from consumers" found claims that food products are "trans-fat free" to be important. Hong Decl. Ex. D, ECF No. 38-1. This evidence is insufficient. Neither Plaintiff, nor the article Plaintiff links to in her briefing, explain who exactly qualifies as a "free-from" consumer. Without this information, there is no way to gage whether the preferences of "free-from consumers" in 2015 have any bearing on the preferences of the proposed class in this case. And even if the preferences of "free-from consumers" did apply to this case, that consumers put value on claims that a product is "trans fat free" does not mean that they find it important that a food product has 0.00 grams of trans fat rather than .5g of

trans fat (the amount of trans fat in Defendant's product). In all likelihood, consumers would not find that distinction important, as reflected by the FDA finding that less than .5 grams of trans fat is "nutritionally insignificant" and "means the same thing, according to [FDA] regulations as '0 grams.'" *See Chacanaca v. Quaker Oats*, 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010).

Besides these two pieces of evidence, Plaintiff appears to rely on her pleadings to establish materiality. This, too, is insufficient. "A party seeking to certify a class may not merely rest on [her] pleadings." *Nevarez*, 2019 WL 7421960, at *2. Instead, "plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23," including, this case, that Defendant's misrepresentation is material to the class. Plaintiff fails to do so.

Accordingly, because Plaintiff does not sufficiently demonstrate materiality, Plaintiff's fraudulent misrepresentation, negligent misrepresentation, and express warranty claims do not satisfy the predominance requirement of Rule 23(b)(3).

**b. Implied Warranty**

The California Commercial Code "implies a warranty of merchantability that goods 'are fit for [the] ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)). "A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 403, 406 (Ct. App. 2003)).

Relevant to this case, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. Daimier Chrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008). There are some exceptions to this general rule, including "cases involving foodstuffs" and "when the plaintiff relies on written labels or advertisements of a manufacturer." *Id.* (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)). Neither exception applies to this case. The "foodstuffs

:

Initials of Preparer PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-10485-SVW-MRW | Date | January 29, 2025 |
| Title | *Sue Shin v. Sanyo Foods Corp. of America* | | |

exception is designed to discourage the production of adulterated, dangerous foods and to protect consumers from injuries that can result from such products." *Musgrave v. Taylor Farms Pac., Inc.*, No. 18-cv-02841-JSW, 2019 WL 8230850, at *5 (N.D. Cal. Feb. 20, 2019). Here, Plaintiff does not allege that Defendant's noodle products are not fit for human consumption; she alleges that they included certain ingredients she did expect (i.e., trace amounts of trans fat). This claim does not implicate the foodstuff exemption to the requirement of privity between purchaser and producer. *See Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024) (holding that the foodstuffs exception did not apply to the plaintiff's claim that the defendant's food label misled consumers about the presence of "natural flavors").

The written label or advertisement exception to the privity rule also does not apply to this case. While the Ninth Circuit in *Clemens* implies that the exception to vertical privity based on written labels or advertisements of a manufacturer can apply to breach of implied warranty claims, *see Clemens*, 534 F.3d at 1023, the California Supreme Court case it cited for this proposition explicitly held that the exception for representations made on labels or advertisements "[is] applicable ***only*** to express warranties." *Burr*, 42 Cal. 2d at 696 (emphasis added).

Accordingly, "each member of the [Plaintiff's] putative California class must establish that he or she was in vertical privity with [Defendant] to prove his or her implied warranty claim." *See In re ConAgra Foods, Inc.*, 90 F. Supp. at 987. This is an "individual issue[]" that will "predominate over common ones," and therefore "certification of a class to pursue [implied warranty] claim[s] is not appropriate" in this case. *See id.* (denying class certification of an implied warranty claim in a product labeling case because "each member of the California class must establish that he or she was in vertical privity with [the defendant]"); *see also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670 (C.D. Cal. 2014) (holding that the predominance requirement was not satisfied with respect to a breach of implied warranty claim that was based on a purported misrepresentation on the product's label because the class members had to show that they were in vertical privity with the defendant); *Cabrera v. Bayer Healthcare LLC*, No. 17-cv-08525, 2024 WL 1699357, at *9 (C.D. Cal. Feb. 23, 2024) (same).

:

Initials of Preparer PMC

In sum, even disregarding the lack of evidence regarding class wide damages, Plaintiff fails to show that common issues would predominate over individual issues. Plaintiff's proposed class thus fails to satisfy the requirements of Rule 23(b)(3). This deficiency alone is fatal to class certification, meaning the Court need not analyze the other Rule 23 requirements.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for class certification is DENIED.

In its previous order, the Court informed Plaintiff that if she did not correct the deficiencies in her allegations, that the Court would dismiss her claims with prejudice. Plaintiff's amended motion for class certification failed to correct these deficiencies. The Court will thus dismiss Plaintiff's claims WITH PREJUDICE.

**IT IS SO ORDERED.**

:

Initials of Preparer PMC